[S. F. No. 3503.   Department Two.—February 3, 1906.]

## N. C. FARNUM et al., Appellants, v. C. W. CLARKE, JOHN A. BENSON, F. A. HYDE & COMPANY, and HEADLIGHT EXPLORATION COMPANY, Respondents.

SPECIFIC PERFORMANCE—CONTRACT TO SELL LIEU LANDS SELECTED FOR SURRENDERED FOREST LAND—INTEREST UPON SELECTION ASSIGNABLE.—Under the Forest Reservation Act of Congress of June 4, 1897, one owning lands within its boundaries, who surrenders the same to the government, is entitled under contract therewith for an exchange of lands, to select in lieu thereof an equal amount of other public vacant land open to settlement; and a locator making a proper selection of such lieu land, acquires an interest in the land selected, which, prior to the approval thereof by the commissioner of the general land office, is assignable and may be made the subject of a contract of sale, which may be specifically enforced in equity.

ID.—DUTY OF COMMISSIONER OF GENERAL LAND OFFICE—TITLE ACQUIRED—RELATION TO DATE OF SELECTION.—If the selection of public vacant land open to settlement is, in fact, properly made in lieu of surrendered forest land, the commissioner of the general land office has no arbitrary right to reject the selection, but must approve it, and upon such approval a complete title is acquired which takes effect by relation to the date of the selection.

ID.—VENDOR AND PURCHASER—CONTRACT OF SALE—INTEREST OF VENDOR—ESTOPPEL—RIGHT TO SPECIFIC PERFORMANCE.—It is not necessary, in order to sustain the right to a specific performance of a contract to sell land, that at the time when such performance is sought to be compelled, the vendor should have a complete equitable or legal title to the land which he contracted to convey; but it is sufficient that he then has some interest in the property. It is no answer for a vendor to say that the interest or title which the decree seeks to affect is not as complete as that he agreed to convey. . If the vendee is willing to enforce the contract for a lesser interest or a less perfect title, it does not lie with the vendor to object on that ground.

ID.—SUFFICIENCY OF COMPLAINT.—A complaint alleging in substance a contract of plaintiffs with one defendant, employing him to secure

selections of public vacant land open thereto, in lieu of patents
of land within the forest reserve surrendered to the government
by another defendant, and to sell the same to plaintiffs at an
agreed price; that such selections were secured, vesting a present
interest in such other defendant for the benefit of plaintiffs; that
plaintiffs fully performed the contract on their part by paying into
bank the agreed price to be paid according to the contract when
performed by such defendant; that plaintiffs were put into pos-
session of the land by said defendants, and had expended a large
sum in the possession and care thereof,—states a cause of action
for a specific performance against both of such defendants, and
also as against other defendants who took from them with notice
of plaintiffs' rights, and it was error to overrule a demurrer
thereto.

ID.—INJUNCTION PENDENTE LITE—ERROR IN DISSOLUTION.—Where the
verified complaint states sufficient ground entitling plaintiff to an
injunction *pendente lite,* restraining the defendants from inter-
fering with or disposing of the selections involving the land pur-
chased, and to have the same continued in force until judgment
to prevent the relief sought from being abortive, and a temporary
injunction was granted, it was error for the court to dissolve it.

ID.—SUSPENSION OF TOWNSHIPS INCLUDING SELECTIONS—VALIDITY OF
SELECTIONS NOT AFFECTED—RIGHT TO INJUNCTION.—The subsequent
temporary suspension of townships in which the selections were
made, by order of the commissioner, does not affect the validity of
the selections, and the proof of such suspension by affidavit could
not affect plaintiffs' right to the injunction, or afford a reason for
disturbance of it by the court.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order dissolv-
ing a temporary injunction. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, E. D. Larkins, and U. T. Clotfelter, for
Appellants.

Leon Samuels, and Freeman & Bates, for Respondents.

LORIGAN, J.—Two appeals are here presented, one from
a judgment for defendant after a demurrer to an amended
and supplemental complaint had been sustained and plaintiffs
had refused to amend, the other from an order dissolving a
temporary injunction which had been granted when the action
was commenced. The demurrer which was sustained was a

general one, and the validity of the order with reference to it is the first question presented for determination.

The amended and supplemental complaint alleges, that on December 5, 1899, the plaintiffs and the defendant John A. Benson entered into a contract, which is set forth at length in the complaint, the essential provisions of which recite that plaintiffs employ and contract with Benson to locate for them certain government lands, described by particular governmental subdivisions, situated in Kern County, this state, in the district of lands subject to sale at the United States land office in Visalia, said lands aggregating 3,320 acres, for which the plaintiffs agree to pay him five dollars per acre for all that portion of said tracts which can be located and a good title obtained; that plaintiffs will deposit sixteen thousand six hundred dollars in the Kern Valley Bank of Bakersfield, with directions to said bank to pay to said Benson five dollars an acre for the land described whenever Benson shall deliver to said bank a deed from the person who makes the location conveying to the plaintiffs all of the right, title, and interest, both present and prospective, of the said locator to the lands described in the agreement, or any portion thereof, together with evidence that the said land has been located by the party making the conveyance, and that said location has been accepted by the commissioner of the general land office; Benson agrees that he will locate and select said land, or cause the same to be located and selected for plaintiffs in the proper United States land office, under the laws of the United States and in conformity with the rules and regulations of the interior department. The contract further provides for the refunding to the plaintiffs by Benson of the sum of five dollars an acre for any portion of said lands to which title may fail. The contract is signed by all the parties thereto, and appended to it is the certificate of the Kern Valley Bank, of the same date as that of the contract, that $16,600 had been deposited in the bank by plaintiffs to be paid Benson whenever the same, or any portion thereof, was payable to him under the terms of the foregoing agreement. The complaint further alleges that the defendant Benson was the agent of defendant Clarke for the purpose of selecting and locating, in the name of said Clarke, government lands of the United States in lieu of lands which had theretofore been held by Clarke under patents from the

United States within the public forest reservations of the United States, and which had been duly relinquished and conveyed by Clarke to the government of the United States under the provisions of an act of Congress approved June 4, 1897, (30 Stats. 11, c. 2,) entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1898, and for other purposes"; that the lands so held by Clarke within the public forest reservations as aforesaid were held by him as security for moneys advanced to Benson by Clarke, and the lands selected and located by Benson in the name of Clarke, in lieu of said lands held by the latter within the public forest reservations of the United States, were likewise held by Clarke as security for moneys advanced as aforesaid: that it was agreed between Clarke and Benson, that when the lands so selected and located as aforesaid were sold by Benson, and the price was satisfactory to Clarke, the moneys received therefrom should be credited upon the indebtedness of Benson, and that Clarke should convey all his right, title, and interest to the lands so sold to the purchasers thereof; that about the 9th of December, 1899, Benson, as agent of Clarke, and in pursuance of the said contract of December 5, 1899, and for the purpose of carrying its provisions into effect, duly selected and located, in the manner prescribed by law, in the name of said defendant Clarke, and in lieu of lands theretofore held by said Clarke as aforesaid, the lands described in said contract; that the price stipulated to be paid by plaintiffs for said described land was satisfactory to Clarke; that said selections and locations of said lands were made in pursuance of the said agreement between defendants Benson and Clarke and for the use and benefit of plaintiffs, and for the purpose of obtaining the patent of the United States to said lands so selected and located, and conveying said lands to the plaintiffs under, and in accordance with, the provisions of said contract; that said lands so selected and located for and on behalf of the plaintiffs were at the time of their selection and location vacant and unclaimed and unoccupied public lands of the United States, and were at said time free and open to entry and settlement under the laws of the United States, and did not then, nor do they now, contain any known mines, salines, or minerals, petroleum, or mineral oil; that plaintiffs have in every respect complied with the

terms of said contract of December 5, 1899, to be by them complied with, and have been at all times since its execution, and are now, ready and willing to perform all its terms to be by them performed; that prior to the commencement of this action the plaintiffs entered upon and took possession of said lands, so selected and located for their use and benefit and on their behalf, by the permission and acquiescence of the said defendants Benson and Clarke, and have expended in so taking possession, and in the care of said lands, the sum of five hundred dollars; that Benson and Clarke prior to and ever since the commencement of the action have wholly failed and refused to perform the terms of the contract of December 5, 1899, to be by them performed, and have repudiated the said contract, and have threatened, and do now threaten, to withdraw the said selections and locations made as aforesaid for the use and benefit and for and on behalf of the plaintiffs from record, and have threatened, and do now threaten, to sell and dispose, or cause to be sold and disposed, the said selections and locations to other parties, and to deprive the plaintiffs of the possession of said lands so selected and located and the right to obtain the title thereto, and that if not restrained by the court will carry said threats into effect and thereby plaintiffs will be deprived of the possession of and the title to said lands, and will suffer great and irreparable injury thereby. Then follow allegations that subsequent to the selection and location of said land for and on behalf of plaintiffs by Clarke, the latter, with the consent of Benson, conveyed an interest in said lands to F. A. Hyde & Company, who thereafter conveyed the same to the Headlight Exploration Company; that at the time of the conveyance of said interest to said corporations they both had knowledge of the contract of December 5, 1899, between Benson and the plaintiffs, and of the agreement between Benson and Clarke, and that Benson was the agent of Clarke as aforesaid; that each of said corporations are under the control of, and are mere agencies of, said Clarke for the purpose of carrying out his threats to sell and dispose of said selections and locations made for and on behalf of plaintiffs, and that the conveyances made to said corporations were made by Benson and Clarke for the purpose of depriving the plaintiffs of the possession and title to said lands. The prayer of the complaint is that

the defendants be perpetually enjoined and restrained from in any manner conveying, transferring, selling, deeding, encumbering, and in any manner dealing with the said selections and locations of said described lands, and with said lands, and in any manner disposing of said selections and locations otherwise than in accordance with the terms and provisions of the contract of the 5th of December, 1899. As to the defendant Clarke it is further asked that it be decreed that he holds the said described lands in trust for plaintiffs, and that he convey said lands to them, upon receiving a patent of the United States therefor, and for other relief, etc. The foregoing constitute the main and principal allegations in the complaint to be kept in view in considering the validity of the order sustaining the demurrer.

It is quite clear from the argument of counsel for respondents that the theory upon which the demurrer was sustained by the lower court was that the allegations of the complaint did not show such facts as would entitle plaintiff to a specific performance of the contract, and hence the prayer of plaintiffs for an injunction to prevent the acts complained of would not lie, because it is specially provided by section 3423 of the Civil Code that "An injunction cannot be granted: . . . 5. To prevent the breach of a contract, the performance of which would not be specifically enforced." Thus the main consideration here is whether the complaint does show such facts as would warrant specific performance. It is insisted by respondent that the contract cannot be specifically enforced, first, because its performance requires the procurement by Benson of the approval and acceptance by the commissioner of the general land office for the locations made, and the obtaining of a good title to said property, obligations which, it is claimed, subdivisions 4 and 5 of section 3390 of the Civil Code expressly declare cannot be specifically enforced, and for the additional reason that specific performance will not be decreed where the defendants have no title to the land involved, and it is claimed that under the locations made neither Benson nor Clarke acquired any title to the property described in the contract. In determining the force of the last proposition it will be necessary to consider in a general way the provisions of the Forest Reservation Act of Congress of June 4, 1897, under which the selections in question here were made.

That act provides that whenever the United States reserves land for forest purposes all those persons owning lands within the boundaries of such forest reservation, upon surrendering the same to the government, shall be entitled to select in lieu thereof an equal amount of other public vacant land open to settlement. The effect of the terms of the act was to provide for an exchange of lands between the United States and the owner or claimant of land within forest reservations. On one hand, the individual conveyed his land within the reservation to the United States; on the other hand, the United States granted him the right to select in lieu thereof a quantity equal to what he had conveyed to it, the same to be selected from the public domain. His right under the act to make such selection within it was coextensive with that domain, and limited only to the selection of lands which were vacant and open for settlement.

The locations which were made by Benson in Clarke's name for the benefit of the plaintiffs were selections made under such right, and it is held that when such a selection is made the locator acquires an interest in the land selected, and immediately upon the filing of such selection is to be regarded as the equitable owner of such land. (*Kern Oil Co.* v. *Clarke,* 30 L. Dec. Dep. Int. 550; *Olive Land etc. Co.* v. *Olmstead,* (C. C.) 103 Fed. 568.) It is claimed by respondents that in the case of *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.,* (C. C.) 104 Fed. 20, it was held that no such equitable title is created by such selection, but only on approval of the commissioner of the general land office. As we understand the decision, we do not think it goes so far. But if it could be so construed, it would only be authority to the extent that by such location itself no perfect equitable ownership was created; that in order to create such a perfect equitable title, location and the approval of the commissioner were both necessary. That case, however, nowhere decides that a locator, by virtue of his location, acquires no right or interest at all in the property. It is to be remembered that under the act one who has conveyed his title to lands within the forest reservation is not taking lands in lieu thereof by grace of the government, but under a solemn contract relative to an exchange of lands. The United States pledged itself to grant him from the public domain lands of equal extent and area to those that he con-

veyed to it, the only condition imposed by the act being that, as so selected by him, they should be vacant and open to settlement. When a locator under the act files his selection in compliance with the rules and regulations of the land department, and accompanies it with proof that the lands of which he makes selection are vacant and open to settlement, and these facts are true, the commissioner of the general land office has no arbitrary right to reject the selection, but must approve it, and upon such approval the right of the selector to the land takes effect by relation as of the date of his original selection. (*Kern Oil Company* v. *Clarke*, 30 L. Dec. Dep. Int. 550.) When such an approval is had by the commissioner, the locator becomes the full equitable owner in the land selected, but it by no means follows that until then he had acquired no interest or right in the land by virtue of his selection. On the contrary, we are satisfied that he did. He was possessed of the right under the act to acquire public land, had exercised that right to become the owner of the particular land on which he filed the selection, and had done all that was required by him to do under the act in order to obtain a perfect title. Under these circumstances, if he acquired nothing more, he acquired at least an inchoate equitable right, a right which was capable of being enlarged into a complete title by the approval of the commissioner of the general land office, and was a right which the land department itself, in effect, recognizes may be sold and assigned after such selection is filed. (*Matter of Mallory*, 31 L. Dec. Dep. Int. 213.)

So in the case at bar the selection of the lands in question under the contract by Clarke for Benson created a present right or interest in them in favor of the latter for the benefit of the plaintiffs. And if the facts as stated in the complaint otherwise disclose a right to specific performance in favor of plaintiffs, we are satisfied that a sufficient interest or ownership in the lands under the selections as made existed in defendants Clarke and Benson, upon which such a decree would operate. It is not necessary, in order to sustain the right to a specific performance, that at the time such performance is sought to be compelled the vendor should have a complete equitable or legal title to the land which he contracted to convey. It is sufficient that he then have some interest in the property. It is no answer for a vendor to say when specific

performance is sought under his contract that the interest or title which the decree seeks to affect is not as complete as he agreed to convey. If the vendee is willing to enforce the contract against a lesser interest or a less perfect title, it does not lie with the vendor to object on that account. It is only when the vendor has no title nor interest in the lands at all that such a decree will not be awarded, for the very good reason that courts will not attempt to require done what it is impossible to do. If, however, the vendor has any interest in the property contracted to be conveyed, the vendee may enforce the contract as to whatever interest he may possess. (*Marshall* v. *Caldwell*, 41 Cal. 611; *Swain* v. *Burnette*, 76 Cal. 299, [18 Pac. 394]; *Burks* v. *Davies*, 85 Cal. 110, [24 Pac. 613, 20 Am. St. Rep. 213]; *Easton* v. *Montgomery*, 90 Cal. 315, [27 Pac. 280, 25 Am. St. Rep. 123].) Under the principle and upon the authority of those cases, as the selections of the lands described in the contract here in question vested a present interest in Clarke, as agent of Benson, for the benefit of plaintiffs, they would be entitled to a decree specifically enforcing the contract under the allegations in the complaint against both Clarke and Benson. From such allegations in the complaint (which, for the purpose of the demurrer, must be taken as true) it appears that the plaintiffs have fully complied with all the terms of the contract required to be performed of them; they have paid into the bank all the money to be paid for said lands on compliance with the contract; the locations provided to be made have been made; an interest in all the property described in the contract has been acquired by defendants Benson and Clarke for the benefit of plaintiffs under it; and plaintiffs have been placed in possession thereof by these defendants, and have expended large sums of money in taking such possession and in the care of said lands. These facts show that the contract has been so far executed by all the parties to it as to leave no room for doubt, under the general principles of law governing the specific enforcement of contracts, that plaintiffs would be entitled to maintain an action for that purpose. Nor do we think there is any merit in the point made by respondents, heretofore referred to, as to the application of subdivisions 4 and 5 of section 3390 of the Civil Code as to specific performance under the allega-

tions of the complaint. If any obligation was imposed on Benson under the contract to procure a good title to the lands, or to procure the acceptance of the commissioner of the United States land office of the locations, and we hardly think there was, these obligations have by virtue of the partial execution of the contract been performed by him. He has filed the locations and done all that the law required him to do to procure a good title. It is not suggested what else he could do. The locations are now before the commissioner of the general land office by virtue of their being made, and in due and proper time he will pass upon them.

This disposes of the main controlling point in the case,— namely, whether the allegations in the complaint would be sufficient to warrant specific performance of the contract,— and we think they would. Some other points are made by respondent. It is claimed that under the contract relied on Benson was not an agent of plaintiffs, and hence no question of trust relationship can arise under its construction; that as between the parties the contract was one for the sale by Benson of the lands described, and not of agency for its location. We do not think this point requires much discussion. The opening language of the contract is significant on this point. The word used there as indicating his relationship to the plaintiffs is that they "employ" him. Aside from this, a consideration of all the terms of the instrument we think clearly shows that as to Benson it was not a contract of sale but one of agency. As to the defendant Clarke we are satisfied that the complaint states a sufficient cause of action against him, and as to the corporations defendant there can be no question of it. The other points made by respondents we deem untenable. We are satisfied for the reasons given that the complaint states a cause of action against the defendants warranting an injunction, and that the sustaining of the demurrer to it by the lower court was erroneous; that the allegations of the complaint disclose most, if not all, of the conditions which under section 3422 of the Civil Code authorize the court to grant an injunction to prevent a breach of the obligation existing in favor of the plaintiffs. The only exception to the allowance of an injunction to prevent the breach of a contract as provided for in section 3423 of the

same code applies to cases where the performance of the contract would not be specifically enforced. As we have shown that the contract involved here could and would be specifically enforced, this latter section has no application. It is true that an action for specific performance would not now invest in the plaintiffs an interest in the lands as fully and completely as the contract contemplated they should ultimately obtain. Such a complete interest could only be secured through the approval of the selections by the commissioner of the general land office. Until he does act, however, Benson has nevertheless such an interest, acquired by the act of selection itself, which he can convey, and which he could be compelled to convey. It is not apparent either but that at any time shortly he may acquire by such approval of the selections by the commissioner a complete title, and hence be able to perform the contract, as was contemplated. This, however, for the purposes of present consideration is of no particular moment. All we are concerned with now is that there exists a contract capable of specific performance and to prevent the breach of which an injunction will lie, as that is the only relief the plaintiffs are now seeking, and to which we think the allegations of the complaint show they are entitled.

Now, as to the validity of the order vacating and dissolving the temporary injunction, which the court had granted on the filing of the original complaint, restraining Benson and Clarke from in any manner dealing with the land and premises described, or in any manner interfering with or disposing of the selections involving said land. When the order vacating such temporary injunction was made there was on file in the action an amended and supplemental complaint containing all the material allegations which are set forth in the second amended and supplemental complaint, which we have just finished considering. The facts stated in such amended complaint would, if proven upon the trial, entitle the plaintiff, for the reasons we have heretofore suggested, to the relief prayed for—a perpetual injunction restraining defendants from committing a breach of contract which it is alleged they were threatening. In aid of that relief, and to make it effectual if granted, they were entitled under section 527 of the Code of Civil Procedure to a preliminary

injunction upon the allegations of their verified complaint, and to have such injunction continued in force. If it were not so continued, their efforts to obtain the relief, which their complaint shows they would ultimately be entitled to, would be abortive. If unrestrained, the threatened breach could be committed by the defendants, irreparable injury follow, and any judgment obtained would be ineffectual. As is declared in *Porter* v. *Jennings,* 89 Cal. 444, · [26 Pac. 965], if such a preliminary injunction be not granted and continued in force, it might appear that when a judgment entitling the plaintiff to the relief sought was entered that the calamity which he was seeking to avert had fallen; the breach of the contract he was endeavoring to prevent had been made; the locations and the lands disposed of, and that the relief came too late. In this view, therefore, it was the duty of the court to continue in force the temporary injunction which had been issued, and the order of the court vacating it was erroneous, unless its action in doing so can be sustained upon the facts stated in an affidavit of Benson filed and used upon the hearing of the motion to dissolve such temporary injunction. This affidavit is short, and states that ever since said lands were located he had been unable to obtain evidence of the fact that such locations had been accepted by the commissioner of the general land office, that said commissioner had never approved said locations, and that prior to the commencement of this action said commissioner had suspended the townships wherein said lands are situated from entry. He does not deny any of the facts stated in the complaint as to the threatened action of Clarke and himself with reference to said lands, or any of the other facts which are set forth in said complaint, and what he does state in no manner warranted the court in disturbing the temporary injunction. In effect, all that is shown by Benson's affidavit is that the commissioner of the general land office has not yet approved the locations, and has suspended from entry the townships in which the lands upon which they were filed are situated. But the fact that the commissioner has not acted upon the selections did not warrant a dissolution of the injunction so as to permit Clarke and Benson to go on and commit the breach of the contract which it is alleged they were threatening to do, and which

Benson in his affidavit does not deny that they intended doing. Nor is the fact that the commissioner has not yet acted upon such locations of any significance so far as the relief sought by plaintiff is concerned. It appears thereby simply that the commissioner has neither approved nor rejected the selections; that he has not acted at all. But, as the law requires him to act in the matter, he will undoubtedly do so in proper time. He may do so at any time; accept the locations and issue a patent. Nor is the fact of any moment that the commissioner has suspended from entry the townships wherein the land described in the contracts is situated. Such order may be revoked at any time. It is only temporary. And as made it does not affect locations which were made prior to the order of suspension. Such locations, though suspended under the general order suspending the townships in which they are made from entry, are only suspended temporarily; they still attach as selections, and are valid until rejected by the commissioner. (*Matter of Yates,* 11 L. Dec. Dep. Int. 556.) So these facts presented by Benson's affidavit afforded no reason for the disturbance by the lower court of the temporary injunction.

This disposes of both appeals, and as the order of the court sustaining the demurrer was erroneous, as likewise was the order vacating and dissolving the temporary injunction, the judgment and order appealed from are reversed. The lower court is directed to overrule the demurrer interposed to the second amended and supplemental complaint, with leave to defendants to answer, and to restore the temporary injunction.

Henshaw, J., and McFarland, J., concurred.