In the Matter of the County of Westchester, Appellant-Respondent, *v.* P. & M. Materials Corporation et al., Respondents, and Melsac Corporation, Intervenor-Respondent-Appellant.

Second Department, March 9, 1964.

*Francis I. Morgan, County Attorney (John B. Gilleran* of counsel), for County of Westchester, appellant-respondent.

*Kent, Hazzard, Jaeger & Wilson (William J. Greer* and *John E. Quinn* of counsel), for P. & M. Materials Corporation, respondent.

*Cerrato, Nayor & Edmiston (M. Morton Edmiston* of counsel), for Boyce Thompson Institute for Plant Research, Inc., respondent.

*Halperin, Shivitz, Scholer & Steingut (David I. Shivitz* and *Shirley R. Levittan* of counsel), for Melsac Corporation, intervenor-respondent-appellant.

*Per Curiam.* On August 2, 1961, the date of the judgment of condemnation herein, the respondent vendor P. & M. Materials Corporation (hereafter referred to as P. & M.), pursuant to a contract of sale, had legal title to the tract at bar, and the appellant purchaser Melsac Corporation (hereafter referred to as Melsac) was the vendee out of possession (*Matter of County of Westchester* v. *P. & M. Materials Corp.,* 38 Misc 2d 734). As the holder of the equitable title, Melsac was an owner of an interest in the property affected by the judgment (Westchester County Administrative Code, art. 8, tit. B, part 1, §§ 101–124, L. 1948, ch. 852; see *Reife* v. *Osmers,* 252 N. Y. 320; *Clarke* v. *Long Is. Realty Co.,* 126 App. Div. 282; cf. *Matter of City of New York [Jefferson Houses-Lombardi],* 306 N. Y. 278; *Champlain & Sanford R. R. Co.* v. *Ostrander,* 151 App. Div. 752; see, also, 7 Williston, Contracts [3d ed., 1963], § 930). Although authority exists to support a choice in Melsac between recovering its deposit or accepting the condemnation award (7 Williston, Contracts [3d ed., 1963], § 942), we hold that the

statute (Real Property Law, § 240-a, quoted in the margin[1]), which is New York's modified version of the Uniform Vendor and Purchaser Risk Act (1936 Report of N. Y. Law Rev. Comm., pp. 755–780; N. Y. Legis. Doc., 1936, 65 M; 9C Uniform Laws Annotated, p. 313), confined Melsac to recovery of its deposit.

The necessity for this statute (Real Property Law, § 240-a) originated in New York's adoption (*Sewell* v. *Underhill*, 197 N. Y. 168) of the rule enunciated in *Paine* v. *Meller* (6 Ves. Jr. 349), which burdened the purchaser with the entire risk of a material destruction of realty, even though he had neither legal title nor possession (*Heerdt* v. *Brand*, 272 App. Div. 143, 144). While the problem of allocating risk of loss in vendor-purchaser relationships arose principally in cases involving physical destructions of premises, New York applied *Paine* v. *Meller* (*supra*) to cases involving partial and total takings in condemnation (*Reife* v. *Osmers*, 252 N. Y. 320, *supra*; *Clarke* v. *Long Is. Realty Co.*, 126 App. Div. 282, *supra*).

In recommending enactment of this statute (Real Property Law, § 240-a), the Law Revision Commission addressed itself to finding a statutory remedy for the uninsured purchaser who, when out of possession and bearing the risk of a material destruction of the premises, was denied recourse to his vendor's subsisting insurance (1936 Report of N. Y. Law Rev. Comm., pp. 766, 776). Similarly, the Uniform Act appears to have been designed only with the problem of a physical destruction of premises in mind (9C Uniform Laws Annotated, p. 313; but, cf., North Carolina Gen. Stat., §§ 39–37 to 39–39, which adopted the Uniform Act but omitted any reference to eminent domain).

Though the Law Revision Commission Report stated that, upon a material destruction of the premises, the Uniform Act effected a recission when the purchaser had neither legal title nor possession (Real Property Law, § 240-a; 1936 Report of N. Y. Law Rev. Comm., pp. 765, 778), it has been held that, under those circumstances, the purchaser may be granted

---

1. Section 240-a of the Real Property Law insofar as it is relevant to this appeal provides:

" 1. Any contract * * * for the purchase and sale * * * of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:

" (a) When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid ".

specific performance together with an abatement of the selling price (*Rizzo* v. *Landmark Realty Corp.*, 277 App. Div. 1094, mot. for lv. to app. den. 278 App. Div. 630; see *Burack* v. *Tollig*, 6 Misc 2d 450, mod. *sub nom. Burack* v. *Chase Manhattan Bank*, 9 A D 2d 914, affd. *sub nom. Burack* v. *Tollig*, 10 N Y 2d 879; and, see, *Horowitz* v. *Haber*, 37 Misc 2d 1036, in neither of which the point was directly at issue; see, also, 51 Harv. L. Rev. 1276, 1279). However, while in contract law, both the public taking of all or a material part of realty and its material destruction are similar in their consequences, each rendering the vendor unable to perform, they in fact represent very different economic realties which bear both upon the presumed intentions of the parties and the construction of the statute (Real Property Law, § 240-a). The statute proposes to do for vendors and purchasers, who do not contract themselves out of it, what most well-advised vendors and purchasers would do for themselves by express contract.

In the case of a material destruction, we may reasonably assume that the purchaser would not have entered into the contract if his was the loss to bear even though he was without legal title or possession. Equally, in the case of a total or material taking by eminent domain, we may assume that the vendor would not have entered into the agreement if the purchaser, though considered the owner in equity (7 Williston, Contracts [3d ed., 1963], § 930; cf. Real Property Law, § 294), was to bear no risk of loss but only the advantage of gain in connection with the condemnation award. In the case of a material destruction, the availability of specific performance with abatement under the statute (Real Property Law, § 240-a), upon which we have not had occasion to pass (cf. *Polisiuk* v. *Mayers*, 205 App. Div. 573 [2d Dept.]; *Burack* v. *Tollig*, 10 N Y 2d 879, *supra*), finds rational support in the expectation that a purchaser may want his bargain for a proportionately diminished consideration. Such an intention may reasonably be imputed to the contracting parties, resting as it does on the just result that both parties will thus realize, in lesser form, the substance of their agreement. However, in the case of a total or material taking in eminent domain, because the vendor cannot be assumed to have taken on the full risk of loss and to have granted the purchaser the prospect of all the gain, and because, unlike the case of physical destruction, the vendor cannot insure himself against a contract loss occasioned by the taking, we may impute to the contracting parties the intention that, in such a case, the vendor is relegated to the

condemnation award which will give him the fair market value of his property.

Under subdivision 6 of section 101 of the Westchester County Administrative Code,[2] Melsac was entitled to compensation for the " actual loss " sustained by it because of the condemnation of the tract. Relying on that section, Melsac at Special Term demanded compensation for expenses in the sum of $617,145.27 which it claimed it had incurred in connection with its plans for the development of the tract, arguing that, because its expenses were reasonable and related to the tract, they were automatically compensable under the said Westchester County Administrative Code provision (§ 101, subd. 6).

We hold that this Administrative Code provision prescribes only just compensation to an owner for the loss sustained by him because of the public taking of his property (see Westchester County Administrative Code, § 110; *County of Erie* v. *Fridenberg,* 221 N. Y. 389, 393). We do not think, nor does any evidence suggest, that the Legislature intended to give to a Westchester condemnee more than the constitutional standards require elsewhere.

Melsac's claim of $617,145.27 consists principally of architectural fees in the sum of $560,886.04. Of the latter amount, the sum of $100,000 allegedly involves fees for plans which were not used because Melsac decided to build a project different from the one it initially had contemplated. Neither reason nor authority supports a condemnor's liability for an expense of that nature. The balance of $460,886.04 involves fees allegedly incurred for the design of 20-story apartment buildings and commercial structures, though Melsac had not secured the essential Thruway interchange and the zoning changes without which its project was an economically inviable plan.

A condemnor is not liable for architectural fees for structures prohibited by existing zoning regulations, amendments of which were not shown to have been substantially probable (cf. *Matter of County of Westchester [Brontown Realty Corp.]*, 204 Misc. 1031, affd. 285 App. Div. 1169). Particularly is this so when the intended use could not have been realized without an essential traffic interchange, the prospect of which was unsupported by the evidence (*Matter of County of Westchester* v. *P. & M. Materials Corp.*, 38 Misc 2d 734, 740, *supra*). Indeed, even

2. The cited subdivision of the Westchester County Administrative Code provides that "damage" in condemnation proceedings thereunder means "the reasonable and adequate compensation to which an owner may be entitled as the equivalent for the actual loss sustained by him by the public taking of his property."

if we assume that architectural fees may be recovered in the circumstances of this case, the questionable character of the evidence which Melsac submitted in their support was sufficient to justify their denial. Finally, the balance of Melsac's alleged expenses for, among other things, a traffic study, site plan, and legal and accounting services, are not compensable. On this record they appear inseparably related to the purpose of the disallowed architectural fees.

On July 17, 1961 the county, at its request, was informed by P. & M. of the terms of the P. & M.–Melsac contract. Two days later — July 19, 1961 — the county filed a *lis pendens* against the tract of land and initiated the condemnation proceeding by serving its condemnation papers, making them returnable on August 2, 1961, the law day set forth in the contract. Having caused the judgment of condemnation to be entered on that day, thus preventing the execution of the contract, the county argues that the contract, the sole basis of Special Term's award, was not a sale under subdivision (a) of section 109 of the Westchester County Administrative Code.[3] In our opinion, the county is estopped from raising an objection, the efficient cause of which is its own conduct (*Imperator Realty Co.* v. *Tull,* 228 N. Y. 447, 457).

Nevertheless, we regard the P. & M.–Melsac contract as an evidentially speculative basis for the evaluation of the tract. Even if we assume that the tract's difficult terrain invited easy exploitation, nevertheless, on the date of the judgment of condemnation (Aug. 2, 1961) the tract was still functionally and legally unsuited for Melsac's project. If the required zoning changes and the required construction of the Thruway traffic interchange had been shown, by substantial evidence, to have been reasonably probable (cf. *Olson* v. *United States,* 292 U. S. 246, 255; *United States* v. *Waterhouse,* 132 F. 2d 699, 703), Special Term might have relied upon the P. & M.–Melsac contract price. But Special Term impliedly found the contrary with respect to the requisite zoning changes, and expressly found the contrary with respect to the construction of a Thruway traffic interchange. Thus, in our opinion, when the best use asserted is dependent upon conditions neither probable nor in being, the property under consideration may not be evaluated on the basis of that use. A necessary corollary of

3. The cited subdivision of the Westchester County Administrative Code makes admissible in proof of value or damage, "evidence of the price and other terms upon any *sale,* or of the rent reserved and other terms upon any lease, relating to any of the property taken  *  *  *  or to any other property in the vicinity thereof". (Emphasis added.)

that premise is that any sale price related to such best use must similarly be rejected.

A new trial is therefore required to determine the proper value of the tract. Such new trial, however, should be had only as between the county and the defendant P. & M. The other two defendants, the mortgagee Boyce and the intervenor Melsac, are no longer concerned. The mortgagee's interest in this proceeding is limited to the payment of its first mortgage lien amounting to $503,750, and Melsac's interest is limited to the recoupment of the $50,000 which it paid to P. & M. under the contract between them. Both the mortgagee and Melsac are entitled *now* to the payment of the respective amounts due them, plus interest thereon, because the county concedes that the tract is worth $1,200,000.

Accordingly, the decree should be modified on the law and the facts as follows:

(1) By striking out paragraphs second to fourth inclusive and eighth to twelfth inclusive, relating to costs, the fixation of value, the apportionment of the total award among the three defendants, the payment to the defendant P. & M. and the extinguishment of its rights;

(2) By adding a paragraph awarding to the mortgagee, the defendant Boyce, the sum of $503,750, with interest thereon to May 1, 1963 of $40,296.67, making a total of $544,046.67, with interest thereon from May 1, 1963, and directing the county to pay to the defendant Boyce the total sum thus awarded;

(3) By adding a paragraph awarding to the defendant Melsac the sum of $50,000, with interest thereon to May 1, 1963 of $3,494.45, making a total of $53,494.45, with interest thereon from May 1, 1963, and directing the county to pay to the defendant Melsac the total sum thus awarded; and

(4) By adding, in lieu of the third paragraph, a paragraph to the effect that the awards made to the defendants Boyce and Melsac are in full satisfaction of compensation to which they, as mortgagee and contract purchaser respectively, are entitled for all their right, title and interest in and to the land acquired by the county.

As so modified, the decree should be affirmed as to the defendants Melsac and Boyce, without costs; a new trial should be granted as between the county and the defendant P. & M. only, with costs to abide the event; all the issues relating to the defendant Boyce and its mortgage and the amount due thereon, and all the issues relating to the defendant Melsac and the amount due to it by virtue of its contract with P. & M., should

438

be severed; and the proceeding should be remitted to the Special Term for the entry of an appropriate final decree accordingly in favor of the defendants Boyce and Melsac, and for the new trial as between the county and the defendant P. & M.

The order permitting the defendant Melsac to intervene as a party defendant should be affirmed, without costs.

Findings of fact which may be inconsistent herewith (see 38 Misc 2d 734) are reversed, and new findings are made as indicated in this opinion.

BELDOCK, P. J., KLEINFELD, CHRIST, HILL and HOPKINS, JJ., concur.

Decree modified accordingly.