DONALD J. LUCENTI, Appellant, v CAYUGA APARTMENTS, INC., Respondent.

Third Department, December 1, 1977

## APPEARANCES OF COUNSEL

*Michael J. Pichel (Connie Fern Miller* of counsel), for appellant.

*Van Lengen, Sanford & Papworth (George H. Van Lengen* of counsel), for respondent.

## OPINION OF THE COURT

LARKIN, J.

On June 21, 1975 the parties herein executed a written contract for the sale of two lots with commercial buildings thereon in the City of Ithaca. The purchase price was $108,000, including a $1,000 deposit paid upon the execution of the contract. On June 28, 1975, prior to the scheduled August 1, 1975 closing date, one of the buildings was completely destroyed by fire. This action was commenced by the plaintiff on November 19, 1975 for specific performance with an abatement of the purchase price. Following a trial without a jury, the trial court dismissed the complaint upon the following grounds: (1) that under section 5-1311 of the General Obligations Law plaintiff did not have a right to specific performance with an abatement of the purchase price, and (2) that the contract was effectively terminated by oral agreement and conduct of the parties. We disagree.

Section 5-1311 of the General Obligations Law provides as follows:

"1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:

"a. When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid * * * (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right

to enforce the contract; but there shall be, to the extent of the destruction or taking, an abatement of the purchase price."

There is no dispute that a "material" part of the subject premises was destroyed and that the contract did not "provide otherwise". The question presented, therefore, is whether section 5-1311 of the General Obligations Law bars plaintiff from seeking specific performance with an abatement in the purchase price.

The common-law rule was that the vendee could get specific performance with an abatement if a material portion of the premises was destroyed, without fault on the part of the vendee, prior to the conveyance *(Polisiuk v Mayers,* 205 App Div 573). In its report recommending enactment of section 240-a of the Real Property Law (now General Obligations Law, § 5-1311), the Law Revision Commission specifically disapproved the rule stated in *Polisiuk v Mayers (supra),* and stated that in the case of substantial destruction of the premises, the effect of the statute is to automatically rescind the contract (1936 Report of NY Law Rev Comm, pp 778-779). Contrary to this legislative history, relied upon by the trial court, the heavy weight of authority has been that this statutory provision did not destroy the common-law right of the vendee to specific performance with abatement, even in cases where the loss is material *(Rizzo v Landmark Realty Corp.,* 277 App Div 1094, mot for lv to app den 278 App Div 630; *Burack v Tollig,* 6 Misc 2d 450, mod *sub nom. Burack v Chase Manhattan Bank,* 9 AD2d 914, affd *sub nom. Burack v Tollig,* 10 NY2d 879. See, also, *Matter of County of Westchester v P. & M. Materials Corp.,* 20 AD2d 431).

A fair reading of the statute uncovers an intention to protect the vendee from being forced to purchase worthless property. If, however, a vendee is willing and able to perform with an appropriate adjustment in the purchase price, there is no logical basis for distinguishing between a loss to a "material" and an "immaterial" portion of the subject premises. For this reason we conclude that the trial court erred in overlooking the common-law construction of the statute.

In considering the issue of abandonment of the contract, we note initially that the trial court properly rejected plaintiff's argument that section 5-1103 of the General Obligations Law requires that a contract for the sale of real property be terminated in writing. This statute merely states the well-established rule that an agreement canceling a written con-

tract requires some consideration *(Nassoiy v Tomlinson,* 148 NY 326; *Coe v Hobby,* 72 NY 141; 10 NY Jur, Contracts, § 419). It has long been established that, provided there is adequate consideration and the other requisite elements of a contract are met, a parol discharge of a contract for the sale of land is valid *(Strychalski v Mekus,* 54 AD2d 1068; 56 NY Jur, Statute and Frauds, §§ 156, 157).

■ The factual question of abandonment, therefore, becomes the crucial issue in this case. We recently restated the standard of review which should be applied herein: "In a nonjury case, this court's inquiry is not limited to whether the findings were supported by some credible evidence. If it appears on all the credible evidence that a different finding or a finding different from that of the court is not unreasonable, then this court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from such testimony *(Spano v Sperini Corp.,* 25 NY2d 11). It is within the power of this court to grant the judgment which upon the evidence should have been granted by the trial court." *(Shipman v Words of Power Missionary Enterprises,* 54 AD2d 1052, 1053.)

■ The trial court's view of the evidence is characterized in the following sentence from the decision below: "Plaintiff's conduct was best summarized in his brief when he stated 'the deal to purchase the property at the contract price was off— the price had to be reduced'". The trial court's error in deciding that plaintiff could not have specific performance with an abatement thus tainted its determination on the issue of abandonment.

Defendant's evidence in this regard comes entirely from the testimony of Dorothy Saperstone, a corporate officer, who testified that within one week of the fire plaintiff told her in a telephone conversation that "the deal was off" and that he was no longer interested in the sale. Plaintiff contradicted this version of the events following the fire and testified that he had never agreed to abandon the contract, but rather had demanded specific performance with the abatement in the purchase price. On July 9, 1975, subsequent to the alleged telephone conversation between Mrs. Saperstone and plaintiff, the attorneys for the defendant sent to the plaintiff's attorney a written proposal to modify the contract by adjusting the purchase price, in contemplation of anticipated insurance proceeds. Although plaintiff rejected this proposal, the offer is

strong evidence that defendant did not consider the contract to be abandoned as of the date the modification proposal was made. In addition, defendant did not attempt to return plaintiff's $1,000 deposit until October, 1975, at least three months after it contends that the contract was abandoned. This late performance of a logical act of termination is inconsistent with defendant's claim of prior abandonment. It is also noteworthy that plaintiff rejected this attempted refund of his deposit.

The plaintiff is entitled to specific performance with an abatement in the purchase price to reflect the actual value of the property destroyed by the fire *(Burack v Tollig, supra)*.

The judgment should be reversed, on the law and the facts, without costs, and the matter remitted for further proceedings not inconsistent herewith.

SWEENEY, J. P., MAHONEY, MAIN and MIKOLL, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and matter remitted for further proceedings not inconsistent herewith.