[Civ. No. 26273. Fourth Dist., Div. One. Apr. 27, 1983.]

ALBERT D. DIXON, Plaintiff and Respondent, v.
SALVATION ARMY, Defendant and Appellant.

464

COUNSEL

Hinchy, Witte, Wood, Anderson & Hodges, Stephen G. Flynn, Michael B. Witte, A. Kendall Wood and William R. Winship, Jr., for Defendant and Appellant.

Mitchell, Ashworth, Keeney, Barry & Pike and E. Ludlow Keeney, Jr., for Plaintiff and Respondent.

OPINION

COLOGNE, Acting P. J.—The Salvation Army appeals an order granting Albert D. Dixon's motion for summary judgment in Dixon's action for declaratory relief.

The facts of this case are not in dispute and the parties agree summary judgment is an appropriate method to resolve the issues (Code Civ. Proc., § 437c, subd. (c)). Dixon and the Salvation Army entered a real estate purchase and sale agreement. The Salvation Army agreed to sell to Dixon two parcels, described herein as "8th & K property" and "8th and J property." Both parcels were improved with commercial structures. The 8th & K property included a two-story office building and warehouse building and the 8th and J property included a three-story brick warehouse.

The parties opened an escrow, and the escrow instructions were later amended to reduce the sales price from $1.1 million to $900,000 because the parties discovered the 8th & J property had certain structural deficiencies.

Before the escrow closed and before either title or possession passed from the Salvation Army to Dixon, one of the two buildings on the 8th & K property was destroyed by fire. The Salvation Army received $240,000 as fire insurance proceeds, but it became apparent during the negotiations following the fire that the destroyed building was significantly underinsured. The Salvation Army could not, of course, deliver the property in the "same general condition minus normal wear and tear as when inspected prior to opening of escrow" as the contract provided and the parties could not agree to a new price of the property as is. This litigation resulted.

Dixon sought and obtained a court declaration that "as a result of the destruction by fire of the improvements on the . . . '8th & K property,' the total purchase price to be paid . . . should be abated to reflect the loss—if any—of the proportionate value of the improvements on the 8th and K property to the total value of all of the property sold" under the agreement. The effect of this order was to authorize Dixon to seek specific enforcement of the contract at an abated price. This price was to be determined by the parties' negotiation or future litigation. The Salvation Army had requested a declaration that the contract should be rescinded or, alternatively, the contract could be enforced without an abatement of the sales price.

The Uniform Vendor and Purchaser Risk Act (Uniform Act) was adopted in California and codified as Civil Code section 1662. This statute provides:

"Any contract hereafter made in this State for the purchase and sale of real property shall be interpreted as including an agreement that the parties shall have the following rights and duties, unless the contract expressly provides otherwise:

"(a) If, when neither the legal title nor the possession of the subject matter of the contract has been transferred, all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid;

"(b) If, when either the legal title or the possession of the subject matter of the contract has been transferred, all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he entitled to recover any portion thereof that he has paid.

"This section shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

"This section may be cited as the Uniform Vendor and Purchaser Risk Act."

Since neither title nor possession had passed to Dixon, the provisions of subdivision (a) apply and the Salvation Army had the risk of loss. This rule prohibits the Salvation Army from enforcing the contract and permits Dixon to rescind and recover any consideration. The statute is silent, however, on whether Dixon can specifically enforce the contract with or without an abatement in price.

Of the other jurisdictions which have enacted the Uniform Act, New York appears to be the only one which has previously resolved whether the vendee may obtain specific enforcement of the contract at an abated purchase price.

In *Rizzo* v. *Landmark Realty Corp.* (1950) 277 App.Div. 1094 [101 N.Y.S.2d 151], the court held the Uniform Act precludes a vendor from specifically enforcing a real estate sales contract when a material part of the subject property has been destroyed, but it does not destroy any common law rights of the purchaser to specific performance with abatement. This same rule governed *Burack* v. *Chase Manhattan Bank* (1959) 9 App.Div.2d 914 [194 N.Y.S.2d 987] (affd. *sub nom. Burack* v. *Tollig* (1961) 10 N.Y.2d 879 [223 N.Y.S.2d 505, 179 N.E.2d 509]), as well as *World Exhibit Corp.* v. *City Bank Farmers Trust Co.* (1945) 186 Misc. 420 [59 N.Y.S.2d 648].

In *Lucenti* v. *Cayuga Apartments, Inc.* (1977) 59 App.Div.2d 438 [400 N.Y.S.2d 194], the court discussed the New York modified version of the Uniform Act. Section 5-1311 of New York's General Obligations Law is in essence the Uniform Act but with the added provision that "if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract, but there shall be, to the extent of the destruction or taking, an abatement of the purchase price."

Thus, the New York Legislature has expressly provided for the situation where the vendor has the risk of loss and an immaterial part of the property is destroyed. In *Lucenti,* the court considered a similar situation except found the destruction of the subject property was material. Finding "no logical basis for distinguishing between a loss to a 'material' and an 'immaterial' portion of the premises," (400 N.Y.S.2d at p. 195) the court allowed the vendee to specifically enforce the contract at an abated price. It is clear the court was also applying the common law rule of New York (which permitted the vendee to enforce a contract at an abated purchase price), thus providing no assistance in interpreting the California statute. In applying the common law rule, the New York court recognized, but chose not to follow, the recommendation of the New York Law Revision Commission Report of 1936 (the same year New

York enacted the Uniform Act), which suggested rescission of the contract was the best remedy when a material part of the subject property was destroyed.

■ The long established rule in California, stemming from cases occurring after the San Francisco fire of 1906, differs from the common law of New York. In *Potts Drug Co.* v. *Benedict* (1909) 156 Cal. 322, at page 334 [109 P. 432], the court stated in dictum: "Where there is a mere agreement to sell, and title therefore has not passed, the loss falls on the vendor for the same reason. In such a case the vendor is excused from the performance of his contract under *the rule we have discussed* by reason of the destruction of the thing, but he cannot retain money already paid on account of the proposed purchase, or recover moneys remaining unpaid. [Citations.]" (Italics added.)[1] Thus, we hold where a material part of the subject property is destroyed without the fault of either party and neither title nor possession has passed to the purchaser, the vendor's performance is excused and the purchaser is entitled to the return of any consideration paid.

We believe the more equitable approach and one more compatible with the Uniform Act is to place the parties in their original position, free to make a new bargain. A rule that denies a vendor the ability to specifically enforce the sales agreement where the material part of the consideration is lost or destroyed calls out for the converse also to be applied. It would be grossly unfair to require either party to accept consideration less than the whole of what was bargained for under these circumstances. If it is unfair to force the purchaser to receive materially damaged property, it is equally unfair to compel the vendor to accept a price substantially below what he bargained for.[2] Although a court in equity has broad powers, it should not use its jurisdiction to remake the contract for the parties, particularly on the critical term of the purchase price. This task is better left to the further negotiations of the parties, with neither compelled to strike an agreement. Specific performance with abatement of the purchase price is not an appropriate remedy for the purchaser.

---

[1]The rule the court discussed was: "Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing to which it relates, the subsequent perishing of the person or thing will excuse the performance. Thus where the contract relates to the use or possession or any dealing with specific things in which the performance necessarily depends on the existence of the particular thing, the condition is implied by the law that the impossibility arising from the perishing or destruction of the thing, without default in the party, shall excuse the performance, because, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the subject of the contract." (*Potts Drug Co.* v. *Benedict, supra*, at p. 332.)

[2]We do not suggest by this opinion that the vendee could not enforce the sales agreement where the land alone is the major or material element of the bargain and the buildings an immaterial part of the consideration, because the statute upon which we rely speaks of a loss of the material part of the subject matter of the contract.

Judgment reversed.

Staniforth, J., concurred.

**WORK, J.**—I respectfully dissent:

Because I find the trial court's disposition properly places the risk of loss, especially on the facts of this case, I would affirm.

The majority opinion omits several significant portions of the dealings between these parties. As a result, it overlooks the equities of this specific transaction and ignores commercial reality.

First, an unusually lengthy escrow period (one year) was given at Salvation Army's request to accommodate its moving out. Seller retained title and possession until close of escrow.

The escrow agreement stated buyer was to evaluate the properties and allocate the purchase price between the buildings and property.

The fire occurred eight months after opening of escrow.

The property consisted of two contiguous parcels of real property in a desirable downtown San Diego location, one (8th and J) improved by a single structure (three-story warehouse) and the other (8th and K) contained two buildings (a warehouse and a two-story office building). Only the two-story office building was destroyed in the fire, leaving two parcels of real property and two buildings.

The allocation was made and the value was generally assessed at $700,000 for the 8th and K property and structures, and $200,000 for the 8th and J parcel and building.[1]

The draft relies upon language in the *Potts* drug decision. No case could be more inapposite. First, the case involved the sale of a *leasehold* interest by the original lessee. The leasehold involved was a mere business tenancy for a term of years allowing a business to be conducted within certain portions of a building owned by a third party. The language of the contract of sale expressly stated title passed to the buyer when the sale agreement was executed and the down payment made, although seller was permitted to remain in possession for a period of time. After title passed, and before seller gave up possession, the

---

[1]Before the purchase price was reduced from $1.1 million to $900,000, the allocation for 8th and J was $400,000. It was reduced after determining structural changes to bring the J Street warehouse up to seismic code would be $550,000 and it was probably more economical to tear the building down and rebuild.

building (and the leasehold) was totally destroyed. The buyer refused to pay the contract balance contending: (1) title had not passed and the risk of loss was on the seller and, (2) since the premises had been totally destroyed, there was no longer any leasehold possessory interest to pass, and seller's condition precedent of passing the possessory interest was not performed. The Supreme Court held title had passed to the buyer and the risk of loss was placed upon him. Further, the court held since the premises were destroyed through no fault of seller before seller could physically transfer the leasehold possessory interest, seller was excused from doing so. Therefore, buyer had to pay the balance.

In *Potts,* the buyer was compelled to pay a large sum of money for property which was entirely destroyed, without receiving any substantial benefit therefrom. However, this imposed no greater hardship than had there been no reservation of possession of the premises and the buyer had been in actual possession before the fire.

The question of who bears the risk of loss should be dispositive here. Clearly, a seller bears the risk of loss under the *Potts* analysis until title or possession passes. Civil Code section 1662, adopted after *Potts,* does not change this rule. Consistent with *Potts,* subdivision (b) imposes the risk of loss upon a buyer when either legal title or possession of the subject property is transferred before destruction. Also, under subdivision (a) where neither legal title nor possession has passed when all "or a material part" of the premises are destroyed through no fault of the buyer, the seller cannot force performance of the contract and the buyer may recover any prepaid portion of the purchase price.

*Potts* does refer, in passing, to the elementary rule of the law of sales, i.e., where the loss falls upon the seller because title has not passed, the seller is excused from performing the contract. However, *Potts* only discusses the complete destruction of property, talking in terms of impossibility of performance from the perishing of the person or thing.

The majority assume the loss of one of the three buildings on the two parcels of scarce downtown San Diego real estate materially destroyed the essence of the bargain. This ignores the commercial reality readily visible through our chambers windows. However, it is necessary to engage in this fiction to set aside the ruling of the trial court for, where there is an immaterial destruction and the vendor may enforce the contract against the vendee, the vendee is entitled to abatement.[2] (*Smiddy* v. *Grafton* (1912) 163 Cal. 16 [124 P. 433]; *Miller* v. *Dyer* (1942) 20 Cal.2d 526 [127 P.2d 901, 141 A.L.R. 1428].) In *Miller,* the seller agreed to convey certain real property and cash to buyers for considera-

---

[2]In total context, the buyer claims the loss of one building does not materially destroy the essence of this bargain. The trial court found in his favor, and buyer's position is commercially realistic.

tion. Due to an unforeseen happening, seller was unable to convey legal title although she held equitable title to the property, and could obtain only three-fourths of the actual cash consideration she had agreed to convey. The court noted seller's inability to convey according to the contract would prevent her from specifically enforcing the contract. However, she was not permitted to defend the buyer's specific performance action on the ground "that her title is not so complete as the one she agreed to convey." (*Id.*, at p. 529.) The court stated if a vendor has any interest in the property it has contracted to convey, the vendee, at its option, may enforce the contract with respect to whatever interest the vendor possesses, and may also be compensated for the deficiency in performance. (See *Smiddy* v. *Grafton, supra; Farnum* v. *Clark* (1906) 148 Cal. 610 [84 P. 166]; *Easton* v. *Montgomery* (1891) 90 Cal. 307 [27 P. 280]; *Swain* v. *Burnette* (1888) 76 Cal. 299 [18 P. 394]; and *Marshall* v. *Caldwell* (1871) 41 Cal. 611.) Miller is somewhat distinguishable because there the inability to convey complete consideration may be deemed to have resulted from the vendor's actual fault.

Although the majority opinion states, a rule denying seller the right to specifically enforce a sales agreement where a material (but not immaterial) part of the consideration is lost or destroyed calls out for the converse to be true, this statement lacks foundation. Nor is it relevant, in the context of our fact situation, whether the abatement requested is related to a material or immaterial part of the consideration. The reason a buyer is entitled to abatement for immaterial diminutions of the value of the consideration is because the seller, both statutorily and by common law, may enforce the contract over the buyer's objections. Certainly, if the seller could force the buyer to perform where there is a material part, but less than all, of the consideration destroyed, then an abatement for the reduction of the total value of the contract based upon the destruction of that material part would be equally required. Where the risk of loss remains with the seller, neither an immaterial *nor* material loss should bar the buyer from purchasing the remainder at an abated price.

If the risk is foreseeable, a commercial practice by which a party might be expected to insure himself against a risk militates against shifting it to the other party. (Rest.2d Contracts, com. c, § 261, p. 315.)

Here, the risk of fire was foreseen by seller and specifically insured against. It is only the probability the coverage was inadequate which smarts. It is equitable to place this consciously self-assumed risk upon the seller who was allowed to remain in possession for one year at its own request to obtain benefits it desired.

The majority also make much ado of the fact the destroyed building was underinsured. Whether the building was fully insured, underinsured or completely uninsured is not relevant to the issues involved. It relates only to whether there is in fact an economic loss to seller.

Under the majority analysis, buyer is denied his right to specifically enforce even those land contracts where adequate insurance coverage would give seller its entire contract price, or even more.[3]

If we adhere to the concept that real property is unique and such sales may be specifically enforced, the destruction of one or all structures placed upon a piece of land should not prevent a buyer from electing to specifically enforce a sale even though the sale originally contemplated the land in its improved state. The policy reasons for denying a seller the right to force a materially different package upon an unwilling buyer are far different than those permitting an originally willing seller to refuse to specifically perform a contract to convey real property to the extent the property still exists when enforcement is requested. The majority does not quarrel with the harshness of the rule which forces a buyer in the *Potts* case to pay full value for a leasehold interest which has been totally destroyed before possession was even turned over to him on a rule the risk of loss passed when paper title was transferred. Why it is so solicitous of concern for hardships which are only imaginary and which the statute, and common law, properly impose upon sellers retaining both title and legal possession when the risk is realized, is beyond me. If the agreement was to sell two parcels of unimproved property for a total of $1 million, and one parcel was condemned by the state before title or possession passed, what unfairness is there in permitting the buyer to specifically enforce that portion of the contract regarding the other parcel and, if the parties cannot agree on the proper abatement of the price, to have it determined judicially?[4] (See *Skelly Oil Company* v. *Ashmore* (Mo. 1963) 365 S.W.2d 582, 589.) I find no substantive difference here.

A petition for a rehearing was denied May 16, 1983. Work, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied July 14, 1983. Bird, C. J., and Kaus, J., were of the opinion that the petition should be granted.

---

[3]For a case where seller was entitled to keep the insurance proceeds after a fire loss and to collect the entire contract price undiminished by those proceeds, see *Long* v. *Keller* (1980) 104 Cal.App.3d 312 [163 Cal.Rptr. 532], a case in which the legal title remained in seller at the time of the fire although buyer had already taken possession. The risk of loss was upon buyer under the Uniform Vendor and Purchaser Risk Act (Civ. Code, § 1662, subd. (b)), and the insurance proceeds inured under a policy for which premiums were paid by seller. In buyer's action to recover seller's insurance proceeds, the court held those proceeds were personal to seller and buyer could not use them to offset the balance of the purchase price because it failed to get its own insurance to protect its statutorily imposed risk of loss.

[4]Salvation Army does not quarrel with the formula by which the trial court proposed to compute the abated price.