ESTHER R. POLISIUK and Another, Respondents, *v.* JOSEPH H. MAYERS and Another, Appellants.

Second Department, May 18, 1923.

Vendor and purchaser — action by vendee for specific performance of contract with abatement of price because of destruction of buildings by fire — contract included personal property and provided that risk of loss or damage by fire until delivery of deed is assumed by seller — buildings were destroyed by fire before time for closing title — destruction did not cancel contract — vendee entitled to specific performance with abatement from purchase price of loss caused by destruction of buildings.

A contract for the sale of real property, including personal property thereon, which provides that the risk of loss or damage to the premises by fire until the delivery of the deed is assumed by the seller, is not canceled by the destruction of the buildings on the premises by fire prior to the time for closing title, and the vendee may compel the specific performance of the contract by the vendor with abatement in the purchase price of the loss caused by the destruction of the buildings.

Accordingly, the court had the power to adjust the rights of the parties in this action, and it properly denied the motion of the defendants for judgment on the pleadings.

APPEAL by the defendants, Joseph H. Mayers and another, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 5th day of April, 1923, denying their motion for judgment on the pleadings.

*Charles F. Bailey* [*Elkus, Gleason & Proskauer, J. Alvin Van Bergh* and *William A. Bacher* with him on the brief], for the appellants.

*Nicholas Muller,* for the respondents.

KELLY, P. J.:

The pleadings consisted of the complaint and answer. The action is in equity, brought by vendee against vendor for specific performance of a contract for the sale and conveyance of real estate. The plaintiffs allege that on August 1, 1921, the defendants

agreed to sell and plaintiffs agreed to purchase certain premises in the fifth ward of the borough of Queens "with the buildings and improvements thereon." The contract was in writing under seal and a copy thereof is attached to the complaint. The price was $8,600, $600 paid on signing the agreement, $3,500 to be paid in cash on delivery of the deed and the balance, $4,500, to be paid by a purchase-money bond and mortgage. It was agreed that the deed should be delivered on September 21, 1921. It was provided in the agreement, "All personal property appurtenant to or used in the operation of said premises is represented to be owned by the seller and is included in this sale;" also, "It is represented that if the basement of the building erected on the premises hereby contracted to be conveyed is occupied for living purposes that consent has been obtained and a permit issued therefor by the Tenement House Department."

The contract also contained the following clause: "The risk of loss or damage to said premises by fire until the delivery of the deed is assumed by the seller."

It is alleged in the complaint that the time for delivery of the deed was postponed by mutual agreement of the parties to September 26, 1921. Plaintiffs also allege that the premises at the date of the contract included a bathing establishment two and one-half stories in height, containing several hundred bath houses, fifteen rooms and several hundred lockers; that on September 15, 1921, the building was destroyed by fire; that plaintiffs duly performed the conditions of the agreement on their part to be performed, and are ready, willing and able to carry out the agreement, but owing to the destruction of the building they ask an abatement in the purchase price in such an amount as may be just and reasonable. The plaintiffs ask for a decree for specific performance of the contract with a reasonable allowance or abatement of the purchase price.

Defendants' answer admits the making of the contract, and admits that the building upon the premises was destroyed by fire between the date of the contract and the day fixed for delivery of the deed. Defendants deny that they were unable to deliver the premises or that they still neglect or refuse to do so. For a separate defense they plead the contract, allege the destruction of the building on the premises by fire, and further allege that when the parties met on September 26, 1921, the time set for completing the contract, "the defendants herein offered to return to the plaintiffs the deposit paid upon the execution of the said contract, together with the reasonable cost for the search and examination of the title, and offered to cancel the said contract, and defendants by their answer herein still continue and hereby do offer to return

the said deposit together with the reasonable cost for the search and examination for the said title, and offer to cancel the said contract, and that your defendants made this offer and continue to make said offer and to cancel said contract, upon the ground that the fire which destroyed the buildings prior to the time set for closing of said title was beyond the power and control of the defendants herein and was not caused by their negligence or carelessness or that of their agents or servants, all of which, however, plaintiffs refused and neglected to accept."

Defendants further allege that the improvements erected upon said premises were old and dilapidated and practically of no value, and that the land without the building " was as valuable, and if not more valuable than the buildings erected thereon."

It will be perceived that defendants contend in effect that the fire canceled the contract, and they wish to retain title to the premises which they say are as valuable if not more valuable than they were at the time they contracted for a valuable consideration to convey the property.

While it may be that in the absence of special agreement to the contrary, the vendee assumes the risk of destruction of the buildings upon the property without negligence on the part of the vendor (*Goldman* v. *Rosenberg*, 116 N. Y. 78; *Clinton* v. *Hope Ins. Co.*, 45 id. 454; Pom. Spec. Perf. [2d ed.] § 322; *Paine* v. *Meller*, 6 Ves. Jr. 349), the parties to the contract in the case at bar have expressly stipulated to the contrary. The vendors who contracted to sell and convey not only the land but the building as well, agreed that " The risk of loss or damage to said premises by fire until the delivery of the deed is assumed by the seller."

Upon these pleadings the learned justice at Special Term denied defendants' motion for judgment, defendants appeal, and they present but one point, viz.: " When after the signing of a contract of sale the risk of loss continues to be upon the seller, destruction of a material part of the property which is the subject of the sale, whether personal or real, without fault of the seller, relieves both parties from further obligations under the contract." The appellants argue that the court has no power to " remake the contract " and set a price to which the parties have never agreed, and cites cases in this country and England where courts have been of opinion that except in cases of slight defects or deficiencies equity will not interfere. (*Cato* v. *Thompson*, L. R. 9 Q. B. 616; *Rudd* v. *Lascelles*, L. R. [1900] 1 Ch. Div. 815; Clark Equity [1919], 165, 166.) The New York cases cited by the appellants do not support their contention. On the contrary, in *Bostwick* v. *Beach* (103 N. Y. 414, 422) Judge RAPALLO writing for the court says:

"If a seller of land is not able to comply fully with the contract, either in respect of the quantity of land or the extent of the estate, the court will, at the election of the buyer, decree specific performance of the contract, so far as the same can be performed, awarding compensation to the purchaser by way of abatement from the purchase-price, for any deficiency in title, quantity of land, or other matters touching the estate, the value of which are capable of being ascertained, and thus compensated without doing injustice to either party."

The general rule in regard to contracts for the sale of land is that the owner of the real estate from the time of the execution of a valid contract for such sale is to be treated as the owner of the purchase money, and the purchaser of the land is treated as the equitable owner thereof. The vendor is deemed in equity to stand seized in the land for the benefit of the purchaser, and the latter, even before the conveyance to him, can devise the same, and it descends to his heir, and the land which was agreed to be sold has been turned into money belonging to the vendor. If the vendor die prior to the completion of the bargain, provided there have been no default, the heir of the vendor may be compelled to convey, and the proceeds of the land will go to the executors as personal property. (*Williams* v. *Haddock*, 145 N. Y. 144, 150.) "It is now too well established to be questioned, that the interest of a vendee in such case in the contract, is real estate, and in case of his death, it descends to his heirs, and not to his executors or administrators; and it is devisable as real estate." (*Hathaway* v. *Payne*, 34 N. Y. 92, 103.) In *Sewell* v. *Underhill* (197 N. Y. 168) the vendee had entered into possession under the contract as vendee prior to the delivery of the deed and a house standing on the land was destroyed by fire without fault on either side. The vendee brought an action at law to recover the damage suffered by him through the destruction of the dwelling house upon the theory that there had been a breach of the agreement, in the failure of the defendant to convey the house. Both parties moving for a verdict, the court determined in favor of the defendant and the judgment was affirmed in this court. (127 App. Div. 92.) The Court of Appeals affirmed the judgment and Judge GRAY said in the opinion (p. 170): "I think that it is too late to dispute the English rule and that we must consider it as established by decisions of the courts of this State. It was authoritatively stated by Lord ELDON in *Paine* v. *Meller* (6 Ves. Jr. 349), departing from the rule as asserted in the earlier case of *Stent* v. *Bailis* (2 P. Wms. 220). In *Paine* v. *Meller* the buildings were destroyed by fire before the conveyance was ready. Somewhat like the

present case, there, after the acceptance of the title, a delay occurred in the preparation and execution of the deeds. With respect to that objection of the vendee, which was grounded upon the fire, Lord ELDON said: ' As to the mere effect of the accident itself no solid objection can be founded upon that simply; for if the party by the contract has become in equity the owner of the premises, they are his to all intents and purposes. They are vendible as his; chargeable as his; capable of being incumbered as his; they may be devised as his; they may be assets and they would descend to his heir.' This case has been, repeatedly, recognized as an authority for the rule by the courts of this State. (See *Gates* v. *Smith,* 4 Edw. Ch. 702; *Clinton* v. *Hope Ins. Co.,* 45 N. Y. 454; *Pelton* v. *Westchester Fire Ins. Co.,* 77 ib. 605; *Goldman* v. *Rosenberg,* 116 ib. 78; *McKechnie* v. *Sterling,* 48 Barb. 330; *Wicks* v. *Bowman,* 5 Daly, 225, and see Pomeroy's Eq. Jur., vol. 6, sec. 859.) A contrary view has been taken by courts in other States; but the great weight of authority is in favor of the English doctrine. (See American & English Encyclopædia of Law, vol. 29 [2d ed.], p. 713, where the cases are collated.)" And he said (p. 172): " There is the further feature of this case that the plaintiff, as vendee, went into the possession of the premises upon the execution of the contract, not as a tenant paying rent, but as their equitable owner and entitled to their beneficial enjoyment."

But it will be at once perceived that these cases are no justification for the defendants' claim here that the destruction of the bath houses and personal property resulted in a cancellation of the contract of sale. And the lack of equity in defendants' contention is emphasized by the allegation in its answer that the destruction of the building in no way lessened the value of the property but increased its value. Defendants plead affirmatively " that the improvements erected upon said premises were old and dilapidated and practically of no value, and that the said land without the said building was as valuable, and if not more valuable than the buildings erected thereon." If this was the happy result of the fire it is difficult to see upon what theory the plaintiffs should be deprived of their contract.

All of the decisions quoted, however, except cases where the parties have expressly contracted concerning the contingency of fire between the date of the contract and the delivery of the deed, support the general rule which regards the vendee under a land contract as the equitable owner of the land. The general rule as to the vendee taking the risk of loss with the possibility of gain does not apply when the parties have otherwise stipulated.

37

And in the case at bar the vendors agreed that " The risk of loss or damage to said premises by fire until the delivery of the deed is assumed by the seller." What was the " risk " referred to? If the vendors are right in their statement that the destruction of the buildings in no way affected the value of the property but rather increased it, there was no risk. The plaintiffs, vendees, however, do not agree to this. They say that the destruction of the buildings and personal property which entered into the purchase price, resulted in loss to them and that this was the " risk " which entitles them in equity to an abatement in the purchase price in such an amount as may be fair and reasonable.

*Smyth* v. *Sturges* (108 N. Y. 495, 503) was an action at law by the vendor to recover damages because of the refusal of the vendee to take title for the reason that certain fixtures had been removed from the premises between the date of the contract and the day fixed for delivery of the deed. The vendor in that case offered to make compensation in money, but this was refused. The trial court directed a verdict for the vendee. Judge DANFORTH, writing for the court, said: " The vendor having two remedies, one damages and the other performance, chose the former. This right, if any, to damages he assigned to the plaintiff and the plaintiff has sued. In such an action the vendor must be held strictly to the very terms of his engagement and show the performance of all the conditions on his part necessary to be performed to put the other party in default. In the present instance the defendant was entitled to the stores in the condition in which they were when bargained for, and his refusal to take them in an altered and inferior condition was not a breach of his contract. By his own failure to perform, therefore, the vendor lost his right of action at law and could convey none to his assignee." But whatever may have been the rights of the parties in an action at law, there seems to be no doubt as to the power of a court of equity to adjust the rights of the parties under such circumstances. Judge DANFORTH said in the case cited: " If the vendor had sued in equity for a performance of the contract it is not improbable he would have succeeded, for it seems apparent that compensation might have been made in money for the altered condition of the buildings caused by the removal of the fixtures." In *Listman* v. *Hickey* (65 Hun, 8; affd., without opinion, 143 N. Y. 630) the buildings on the property were destroyed by fire and the purchaser sued at law to recover back her deposit and cost of examination of title. The defendant vendor contended that the fire afforded no ground for plaintiff's refusal to take the deed. The General Term said, by VAN BRUNT, P. J.: " It might very well be that an action

in equity for the performance of the contract might have been maintained, compensation being made to the plaintiff for the damage to the premises and property in question. But no such relief was asked for upon the part of the defendant. He insisted that he had duly performed all the conditions in the agreement, and that the plaintiff had failed to comply with the conditions and terms of the contract upon her part, and damages were claimed by reason of the failure of the plaintiff to take her title. Therefore the parties put themselves strictly upon their legal rights; and under such circumstances it is clear that the only judgment which could be granted was that which was directed by the court below."

In the case at bar the vendees had not taken possession of the property contracted to be conveyed. They allege that they were ready, able and willing to perform on the law day and that it was expressly stipulated in the contract that the risk of loss by fire was assumed by the vendors. If, perchance, the vendors collected insurance on these buildings and personal property which they had agreed to sell and convey and for which they had been partially paid by the vendees, it would appear that there was much to be said in favor of the vendees' contention that in equity some allowance or abatement should be made in the purchase price notwithstanding the vendors' assertion in the answer that the fire really benefited the property. At any rate it was for the court at the trial to adjust the rights of the parties.

I think the learned justice at Special Term was right in denying defendants' motion for judgment on the pleadings.

The order denying defendants' motion for judgment on the pleadings should be affirmed, with ten dollars costs and disbursements.

RICH, JAYCOX, MANNING and KELBY, JJ., concur.

Order denying defendants' motion for judgment on the pleadings affirmed, with ten dollars costs and disbursements.