WORLD EXHIBIT CORPORATION, Respondent, *v.* CITY BANK FARMERS TRUST COMPANY, as Trustee under a Certain Supplemental Trust Agreement with Prudence-Bonds Corporation, Appellant.

Second Department, May 6, 1946.

*Jackson A. Dykman* (*Ralph W. Crolly, Milton Loewe* and *Theodore N. Tarlau* with him on the brief), for appellant.

*Nathan H. Elman* (*Edward J. Danziger* with him on the brief), for respondent.

CARSWELL, J. On July 25, 1944, defendant's predecessor, pursuant to an option in a lease, sold to its tenant a private amusement park, situated in Coney Island, for $275,000. The purchaser made a down payment of $60,000. The vendor was to take back a purchase money mortgage of $125,000, and the balance of $90,000 was to be paid on the closing day, September 15, 1944. On the day the contract was signed, it was assigned by the tenant to Sally L. Draisin to the knowledge of the vendor. On September 14, 1944, it was assigned by Draisin to the Brooklyn Amusement Corporation. On the same day that corporation also received a similar assignment directly from the tenant, or assignor of Draisin.

On August 12, 1944, a fire destroyed 40% of the improvements on the property. The closing day was adjourned to September 29, 1944, and in the meantime the vendor became entitled to and later received $153,000 of insurance for the property destroyed and damaged. On the closing day the

Brooklyn Amusement Corporation, hereinafter called the vendee, demanded title with an abatement of $140,000, which was conceded to be a proper amount, if there were to be an abatement.

The vendor refused to convey on these terms, tendered a deed and demanded the full purchase price. The vendee rejected the vendor's terms, whereupon the vendor made a second tender, i.e., an offer to return the $60,000 down payment and pay $1,000 to cover the cost of title search. The vendee refused this offer and insisted upon a deed with an abatement of $140,000. By mesne assignments the contract and rights thereunder were assigned by the vendee to the plaintiff. It brought this action on May 31, 1945, and obtained a judgment requiring specific performance of the contract with an abatement of $140,000.

The defendant appeals and asserts that the rights of the parties are to be determined by section 240-a of the Real Property Law (L. 1936, ch. 731), and that its offer complied with that statute. The vendee insists that the contract contains engagements which preclude the statute having any effect herein. The contract provided: " In the event for any reason the Seller *is unable to cause to be conveyed marketable title* to the premises *or otherwise to comply with this agreement,* the only obligation of the Seller hereunder shall be to refund the amounts paid by the Purchaser to the Seller under this agreement and the expenses paid by the Purchaser for a title search   *   *   *.

" *The risk of loss or damage to said premises by fire, until the delivery of said deed, is assumed by the Seller.*" (Italics ours.)

If the contract were silent on the subject of risk of loss in the event of damage to the premises by fire before the law day, under *Sewell* v. *Underhill* (197 N. Y. 168, 170), in the absence of a statute, such a loss would fall on the vendee and specific performance of the contract could be had. Recognizing the authority of *Sewell* v. *Underhill* (*supra*), effect was given to a similar risk of loss clause in a contract in *Polisiuk* v. *Mayers* (205 App. Div. 573). There the burden of the loss having been assumed by specific engagement by the vendor, specific performance with an abatement was enforced in favor of the vendee. Unless the authority of that case has been impaired by later cases or by the statute, the judgment herein is correct.

The appellant asserts that the *Polisiuk* case has been overruled, in effect, by *Brownell* v. *Board of Education* (239 N. Y. 369). But, in *Reife* v. *Osmers* (252 N. Y. 320, 323), after noting criticism of the English rule, enforced in *Sewell* v. *Underhill* (*supra*), upon which the decision in *Polisiuk* v. *Mayers* was

based in part, 'the court stated: "That doctrine was not weakened in *Brownell* v. *Board of Education* (239 N. Y. 369, 374). There the parties by the terms of their contract took themselves out of the rule." The provision referred to was a liquidated damage clause that fixed with precision the rights of the parties in the event that a fire occurred and property damage ensued.

To sustain further its contention, the appellant refers to the citation in the *Brownell* case of two Massachusetts cases, and points out that the basis of their doctrine was *Hawkes* v. *Kehoe* (193 Mass. 419). Appellant fails to state, however, that the Massachusetts rule is dissimilar to the New York rule, and that the doctrine of the cases cited is distinguished in the *Hawkes* case from *Allyn* v. *Allyn* (154 Mass. 570). There a special agreement in respect of who was to bear the risk of loss in the event of the destruction of the property by fire was enforced, and the burden was borne by the vendor. Thus the very cases cited and relied on in Massachusetts recognize that by special covenant the risk of loss can be placed upon the vendor and he can be required to perform the contract just as in *Polisiuk* v. *Mayers* (*supra*). Hence, in the light of the foregoing, the language of the *Brownell* case, referring to the Massachusetts cases, is to be confined to a situation where the parties have made specific provision on this phase. Moreover, the criticism in Williston on Contracts (Rev. ed., Vol. 4), in the footnote to section 935 (n. 4), is directed primarily to the English rule upon which the *Polisiuk* case is founded and has no pertinency to cases in New York, where imperative authority requires effect to be given to that English rule.

Appellant invokes from the above-quoted contract a clause which excuses the seller in the event it is unable to convey a marketable title " or otherwise to comply with this agreement ". This provision is of no avail to the vendor where it is able to give a marketable title. General language must be confined in its meaning by the specific enumeration which precedes it. If, for instance, title could not be conveyed because the property was taken in whole or part by eminent domain, such an occurrence would come within the phrase " or otherwise to comply ", being a form of inability to convey title other than from inability because of a defect rendering the title unmarketable. This interpretation excludes failure to perform by reason of destruction of the property by fire. Any doubt as to the propriety of such a construction vanishes under the impact of the next succeeding language, which specifically pro-

vides that in the event of such an occurrence " The risk of loss or damage " is to be borne by the seller. This, of course, means that the seller is subject to the obligations arising from the contract, under the then existing law, which obligations require the seller to respond to the buyer. This specific language relating to the effect of a fire takes precedence over any other general language. As the specific language does not excuse but instead affirmatively imposes obligations on the seller, the preceding general language may not be invoked to excuse the seller. The cases appellant invokes are not to the contrary. They concern contracts with different provisions, and none of them has a provision like " The risk of loss or damage " clause in the instant contract. To be sure, the contract in the *Polisiuk* case did not have a provision of this character, but that is of no importance as the provision itself does not have the effect for which the appellant contends, which view would make the specific and pertinent risk of loss or damage clause meaningless.

Appellant asserts that the rights of the parties, in respect of risk of loss of property by fire, are to be determined, not by the contract, but by section 240-a of the Real Property Law. It is clear that this statute was enacted primarily to save a vendee from the rigors of the English rule that when property is destroyed before the law day the burden is cast on the vendee. The New York cases in enforcing that rule made no distinction between material and immaterial destruction. The statute, however, does. Except where the destruction is substantial or material, the statute is merely declaratory of the pre-existing New York case law. The only part of paragraph (a) which makes a change in the law is clause (1) (4 Williston on Contracts [rev. ed.], § 943B, n. 1). It is the only pertinent statutory provision. It reads:

" Section 240-a. UNIFORM VENDOR AND PURCHASER RISK ACT. 1. Any contract hereafter made for the purchase and sale or exchange of realty shall be interpreted, *unless the contract expressly provides otherwise,* as including an agreement that the parties shall have the following rights and duties:

" (a) When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) *if all or a material part* thereof *is destroyed without fault of the purchaser* or is taken by eminent domain, *the vendor cannot enforce the contract,* and the purchaser is entitled to recover any portion of the price that he has paid; but nothing herein contained shall be deemed to deprive the vendor of any right to recover damages against the purchaser

for any breach of contract by the purchaser prior to the destruction or taking * * *." (Italics ours.)

It provides that the "vendor cannot enforce the contract," and that the purchaser is to be entitled to recover his down payment if the property or a material part is destroyed without his fault before the law day. The introductory subdivision provides, *inter alia,* that a contract for the purchase and sale of realty shall be interpreted to include an agreement that the parties shall have the enumerated rights and duties above stated, "unless the contract expressly provides otherwise". This interpretative directive integrates these provisions into the contract of the parties if the contract is silent on the subject matter of the enumerated rights and duties, because this interpretation is so enjoined "unless the contract expressly provides otherwise". If the vendor and the vendee make a specific engagement in respect of that subject matter, then the statute does not become an integral part of the contract. As was said by NOLAN, J., in *Auswin Realty Corp.* v. *Kirschbaum* (270 App. Div. 334, 338): "Effect must be given, if practicable, to all of the language employed, * * * to reach the real intent of the Legislature." Here, the parties have made a contract which "expressly provides otherwise" in precise language which may not be construed to be meaningless.

Accordingly, the statute has not impaired the authority of *Polisiuk* v. *Mayers* (*supra*) or the cases upon which it is founded.

The appellant asserts that plaintiff may not have specific performance because on the law day it had a claim, under the lease, against the tenant. No such ground was advanced on the closing day. Nor was it then asserted that the vendor had no knowledge of an assignment of the contract prior to the occurrence of the fire. If either contention had been advanced, it may be that by producing all the assignments and other proof one or both could have been cleared up. There was only a mention by the vendor of lack of "official" knowledge of Brooklyn Amusement Corporation as the assignee in connection with having the deed made out in the name of the tenant when the vendor tendered the deed. Passing, however, the effect, if any, of this conduct (*McWhorter* v. *McMahan,* 10 Paige 386), it appears that the Special Term, in its opinion, which is also its decision, specifically provided that the determination was without prejudice to any action which the vendor may have against the tenant. This reservation, by its tenor, implies a finding that the vendor had knowledge of the assignment of

the contract to plaintiff's original assignor Draisin, on July 25, 1944. This fact precludes the assertion by the vendor, as against this plaintiff, of any cause of action it may have against the tenant. (Civ. Prac. Act, § 267.) This is in consonance with the observation by the court on the trial that this knowledge had been established by the proof, which clearly reveals that the vendor knew of the assignment on July 25, 1944, and only refrained from making the formal contract out in the name of Draisin because it had made a conditional contract with another to be effective in the event the tenant did not exercise its option to buy, and the vendor wished to avoid any controversy with that conditional buyer.

Although because of the foregoing it is not necessary to decide the question, it seems that the vendor had no cause of action against the tenant on the law day. The vendor invokes, as a basis for its alleged cause of action, certain provisions in its lease with the tenant which obligated the tenant to repair the property, and asserts that this obligation requires the tenant to rebuild. To sustain this contention, the vendor quotes from the text of Williston on Contracts (Rev. ed., Vol. 6), section 1967, to the effect that a covenant to repair obliges the covenantor to rebuild in the event of destruction of property. The appellant overlooks a footnote to the cited section that expressly recognizes that the New York rule is contrary to the text quoted. (*City of New York* v. *McCarthy,* 171 App. Div. 561; *Freiot* v. *Jacobs,* 209 App. Div. 334.) The effect upon a tenant of destruction of property by fire is regulated by section 227 of the Real Property Law. *Marcy* v. *City of Syracuse* (199 App. Div. 246) is not to the contrary. It merely made inapplicable the statute which relieves a tenant where property is destroyed by fire " without his fault or neglect " by an express finding that the property was destroyed as a consequence of the fault of the tenant; hence the tenant was liable under its express agreement to replace, that is, rebuild. In the instant case, it is conceded that the fire occurred without fault on the part of either the landlord or the tenant.

The judgment for the plaintiff should be affirmed, with costs.

ALDRICH, J. (dissenting). I dissent and vote to reverse the judgment, insofar as it directs a conveyance, with an abatement of the purchase price, and to dismiss the complaint.

The rights and duties of the parties are controlled by section 240-a of the Real Property Law " unless the contract expressly provides otherwise". Neither the legal title nor the possession

of the subject matter of the contract had been transferred to the purchaser by the contract. Therefore, the case comes within paragraph (a) of subdivision 1 of that section. It clearly appears that the fire destroyed a material part of the buildings without the fault of either party. Therefore clause (1) of paragraph (a) applies. Under that provision, the right of the purchaser was merely to recover any portion of the price that had been paid. The statute does not give the purchaser any right to specific performance with an abatement of the purchase price where a material part of the property is destroyed. This contract nowhere " expressly provides otherwise ". The contract provision that " The risk of loss or damage to said premises by fire, until the delivery of said deed, is assumed by the Seller " merely made applicable by express agreement what section 240-a already provided as a statutory matter. The contract also provides as follows:

" In the event for any reason the Seller is unable to cause to be conveyed marketable title to the premises or otherwise to comply with this agreement, the only obligation of the Seller hereunder shall be to refund the amounts paid by the Purchaser to the Seller under this agreement and the expenses paid by the Purchaser for a title search in an amount not exceeding the established net rates of the Title Guarantee and Trust Company." The seller agreed to cause to be conveyed, and the purchaser agreed to purchase, the parcels of land described in the contract, " together with the buildings and improvements erected thereon." When a material portion of the buildings was destroyed by fire, without the fault of either party, the seller became unable to comply with the agreement. To the extent of the buildings destroyed by fire the contract had become impossible of performance. In my opinion, the quoted provision should be construed to cover this situation. Thereunder the only obligation of the seller was to refund the amount paid by the purchaser to the seller, and the expenses paid by the purchaser for a title search. The provision for payment of the expense for the title search was a matter in which " the contract expressly provides otherwise " than the statute provided. The seller is, consequently, liable for the title search.

HAGARTY, Acting P. J., ADEL and NOLAN, JJ., concur with CARSWELL, J.; ALDRICH, J., dissents and votes to reverse the judgment insofar as it directs a conveyance, with an abatement of the purchase price, and to dismiss the complaint, in opinion.

Judgment in favor of plaintiff affirmed, with costs.