Frederick B. Bryant, J.
In this action for specific performance, the plaintiff also seeks a determination as to the amount by which the consideration expressed in the contract of sale should be reduced by reason of the destruction of the buildings on the property by fire. The defendant contends that the contract of purchase and sale was terminated and canceled by mutual agreement.
*155 The defendant is the owner of premises located at 102-106 West State Street and 108-114 North Cayuga Street in the City of Ithaca. On June 21, 1975 it entered into an agreement with the plaintiff whereby it agreed to sell the said premises for the total purchase price of $108,000. One thousand dollars was paid at the time the contract was executed; $19,000 was to be paid at the time of closing and the balance was to be financed by a mortgage of $88,000 given to the defendant. The contract provides that the closing of title should take place "on or before August 1, 1975.”
On June 20, 1975 the building on the described premises at 108-114 North Cayuga Street was substantially damaged by fire. The damage was so extensive that it is most probable that the building cannot be restored but will have to be razed. The plaintiff has demanded performance of the contract of sale with an abatement in the price. The building on the property at 102-106 West State Street was not damaged by the fire.
The defendant’s principal witness was Dorothy Saperstone, an officer of the defendant and manager of its real property since 1974. She testified that after the fire she advised the plaintiff as to the insurance coverage and that he later informed her that due to other commitments he was no longer interested in purchasing the property. Relying on this assurance she showed the building to prospective purchasers during the summer and fall of 1975. The plaintiff did not contradict this testimony but did testify that in various conversations with both Mrs. Saperstone and her husband he had expressed interest in purchasing the property with an abatement of price. He never gave the defendant’s officers any figures by which he felt the price should be reduced. The present action was commenced on November 15, 1975 — approximately four and one-half months after the fire occurred. The defendant contends that the conduct of the plaintiff constitutes an abandonment and cancellation of the contract.
In his complaint the plaintiff alleges that the fire "resulted in substantial destruction of said property”, and reasserts in his brief that the building at 108-114 North Cayuga Street "was substantially destroyed by fire after the signing of the contract, but before the time set for the closing”. In its brief the defendant states that the building at 108-114 North Cayuga Street "was substantially damaged by fire” on June 28, 1975. At the trial plaintiff testified that the cost of recon *156 structing the damaged building was $154,720. Defendant’s expert testified on the trial that the fire made it uneconomic to rehabilitate the damaged building and the best interim use after the fire would be to raze the building and use the land for parking.
The court finds that the building at 108-114 North Cayuga Street was substantially damaged by fire without fault of the plaintiff after the execution of the contract, before the time scheduled for closing and that neither the legal title nor possession had been transferred to the plaintiff and that said substantial damage constituted a destruction of a material part thereof within the meaning of section 5-1311 of the General Obligations Law. As the contract for the purchase and sale of the property contained no provision for risk of loss pending closing, the rights of the parties are governed by section 5-1311 of the General Obligations Law. Plaintiff claims that under this section he is entitled to specific performance of the contract with an abatement equal to the value of the property destroyed by the fire, which he claims is $154,720, allowable only up to the amount of the total contract price of $108,000. He therefore claims he is entitled to a conveyance of the present remaining property without the payment of any purchase price. Defendant claims that under the circumstances, section 5-1311 of the General Obligations Law does not give the plaintiff a right to specific performance with an abatement, but only a right to treat the contract as terminated and to recover the portion of the purchase price he has paid. He further asserts that the evidence at the trial demonstrates that the plaintiff abandoned and effectively terminated the contract after the fire, and that plaintiff is entitled only to a return of the $1,000 down payment on the purchase price which defendant through its attorneys previously sent to plaintiff, but which he returned.
Section 5-1311 of the General Obligations Law was originally enacted as section 240-a of the Real Property Law upon the recommendation of the State of New York Law Revision Commission. The Law Revision Commission recommended this remedial legislation to modify the harsh treatment of a purchaser under the decisional law as succinctly set forth, in the commission’s recommendations and study as follows: "If the premises covered by the contract are damaged or destroyed by fire at any time after the making of the contract, unless the contract provides otherwise the purchaser is bound to pay the *157 full purchase price. Under well-recognized principles of insurance law, he is denied recourse to existing fire insurance carried by the vendor. If the vendor recovers the full purchase price from the purchaser, as the law provides he may, the vendor’s insurance carrier is released from liability, since the vendor has suffered no loss by the fire. If the insurance carrier pays the amount of the loss to the vendor before payment of the purchase price by the purchaser, the carrier may be subrogated, to the extent of its payment, to the vendor’s claim against the purchaser. The purchaser in such a situation, before transfer of title or of possession, is unlikely to have insurance of his own on the premises. The net result in effect, where the purchaser is solvent, is that the property is uninsured from the making of the contract of sale to the taking out of insurance by the purchaser, although the vendor’s insurer collects the usual premium. Such a trap for the unwary purchaser should be eliminated from the law.” (1936 Report of NY Law Rev Comm, p 763.)
To eliminate this trap for the unwary purchaser, the Legislature enacted section 240-a of the Real Property Law, known as "the Uniform Vendor and Purchaser Risk Act”, which is now embodied without change in section 5-1331 of the General Obligations Law, which provides in part as follows:
"1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:
"a. When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid; but nothing herein contained shall be deemed to deprive the vendor of any right to recover damages against the purchaser for any breach of contract by the purchaser prior to the destruction or taking; (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the extent of the destruction or taking, an abatement of the purchase price.”
As the contract of purchase and sale does not expressly *158 provide otherwise, the contract must be interpreted as including an agreement that the parties have the rights enumerated in this statute. As the court finds a material part of the property described in the contract has been destroyed, phrase (1) is applicable and phrase (2) is inapplicable. Only phrase (2) provides for specific performance with an abatement when an immaterial part is destroyed. Phrase (1) provides "the vendor can not enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid”. Phrase (1) does not grant to the plaintiff purchaser a right to specific performance. At most it grants the purchaser a right to terminate the contract and to recover his down payment. By clear inference, if a purchaser does not elect to rescind under the authority of this section, he can only insist upon specific performance without any abatement according to the harsh rule unmitigated by the remedial relief under the statute.
The legislative history demonstrates that under the Uniform Vendor and Purchaser Act a material destruction of the property operates as a rescission of the contract. In explaining this recommendation to the Legislature the Law Revision Commission advised as follows: "It will be noted further that under subdivision (a) of the uniform act, where the loss occurs prior to the transfer of legal title or of possession, the contract in effect is rescinded, since 'the vendor cannot enforce the contract and the purchaser is entitled to recover any portion of the price that he has paid.’ This result is contrary to the result reached in the case of Polisiuk v. Mayers (Appellate Division, Second Department) where the contract provided that The risk of loss or damage to premises by fire until the delivery of the deed is assumed by the seller.’ The court held that even where a substantial part of the property was destroyed by fire prior to the delivery of the deed, the purchaser was entitled to specific performance as to the part remaining with an abatement of the purchase price to the extent of the loss. Although this holding preserves for the purchaser the benefit of his bargain, it would seem more reasonable and more in accord with the actual, although unexpressed intention of the parties, to call the deal off upon the destruction of all or a substantial part of the property.” (1936 Report of NY Law Rev Comm, pp 778-779 [emphasis added].)
The court finds that the plaintiff by his conduct effectively exercised the right granted to him to terminate the contract of purchase and sale. Plaintiff’s conduct was best summarized *159 in his brief when he stated "the deal to purchase the property at the contract price was off — the price had to be reduced”. The defendant attempted to renegotiate the contract by making available to the plaintiff the proceeds of the fire insurance on the property, to be used at the option of the plaintiff to repair the property or to reduce the purchase price. The defendant’s generous proposal was rejected by the plaintiff.
The plaintiff claims the contract of purchase and sale for this real property cannot be orally terminated by rescission or abandonment. Subdivision 2 of section 15-301 of the General Obligations Law provides in part that a "written agreement or other written instrument which contains a provision to the effect that it cannot be terminated orally, cannot be discharged by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the discharge is sought, or by his agent, and cannot be terminated by mutual consent unless such termination is effected by an executed accord and satisfaction”. (Emphasis supplied.) The contract for purchase and sale in this case did not contain a provision that it could not be terminated orally. Furthermore, when defendant returned the down payment, the contract was effectively terminated and there existed no oral executory agreement.
Former section 282 of the Real Property Law relied upon in Brody v Rhoads (33 Misc 2d 699, affd 15 AD2d 561) was repealed effective September 27, 1964 by subdivision 7 of section 19-101 of the General Obligations Law and its provisions are incorporated in section 15-301 of the General Obligations Law. As the statute is inapplicable, the contract for the purchase and sale can be terminated orally. Apart from this statute, a paroi discharge or termination of a contract for the purchase and sale of land is valid. The Statute of Frauds does not relate to an agreement to abandon or rescind a contract for the sale of land. (56 NY Jur, Statute of Frauds, §§ 156, 159; 4 Williston, Contracts [3d ed, 1972], § 592.) The complaint must be dismissed with costs.