OPINION OF THE COURT
 

 Meyer, J.
 

 When prior to title closing a building is substantially damaged by fire may the purchaser under a real estate contract which contains no risk of loss provision obtain specific performance with an abatement of the purchase price? The answer to that question is adumbrated by our decision in
 
 Hecht v Meller
 
 (23 NY2d 301), which noted (at p 304) that section 5-1311 of the General Obligations Law "was enacted to alter the common-law rule which, absent any agreement to the contrary, cast the risk of destruction of the property between the time the contract of sale was entered into and passing of title upon the vendee”, but that the section "did not render realty contracts unenforcible but, rather, simply bestowed a privilege on vendees to rescind the contract”. We now answer the question, as the
 
 Hecht
 
 quotation suggests, affirmatively.
 

 The issue arises in the context of a contract executed June 21, 1975, by which plaintiff agreed to purchase two contiguous parcels of real estate on each of which there was a freestanding building. One week after the contract was executed the older of the two buildings was substantially destroyed by a fire, which, however, did no damage to the other building. On July 9, 1975 defendant sent plaintiff a proposed modification of the contract which permitted plaintiff to collect the insurance proceeds and use them either in reduction of the purchase-money mortgage or in reconstruction of the building and provided for subordination of the purchase-money mortgage to any bank loan obtained for reconstruction. Plaintiff did not accept the proposed modification but testified that he had simply gone along with the suggestion of defendant’s president that they await the insurance settlement. One of defendant’s other officers testified that on or about July 2, 1975 plaintiff advised her he was abandoning any interest in the property.
 

 Defendant submitted proofs of loss to its insurers on September 19, 1975 and received payments of its claims totaling
 
 *535
 
 more than $45,000. On October 15, 1975 defendant’s attorneys forwarded to plaintiff’s attorney their check in refund of the $1,000 deposit paid by plaintiff on signing the contract. Plaintiff’s attorney promptly returned the check, stating that plaintiff wished to proceed with the closing with an abatement of the purchase price. One month later plaintiff began the instant action for specific performance with an abatement of the purchase price.
 

 The Trial Judge held that section 5-1311 of the General Obligations Law required the purchaser either to rescind or to obtain specific performance without abatement and that plaintiff had by his conduct terminated the contract. He, therefore, dismissed the complaint (90 Misc 2d 154). The Appellate Division reversed on the law and the facts and remitted for determination of the abatement to which plaintiff was entitled (59 AD2d 438). On remand the trial court fixed the abatement at $19,500, consisting of $7,500 to remove the remains of the old building and $12,000 as its actual value. Plaintiff again appealed and the Appellate Division modified by increasing the abatement to $27,500, holding that the trial court was correct in considering defendant’s insurance claims but gave too little weight to their statements of value, and fixing the actual value of the building on consideration of the whole record at $20,000 (66 AD2d 928). Plaintiff’s appeal from the Appellate Division’s order, affirming as modified, has been dismissed by us on the ground that he was not aggrieved by the modification (46 NY2d 997). There remains defendant’s appeal which brings up for our review both the Appellate Division’s final order and its earlier nonfinal order (CPLR 5501, subd [a], par 1). There should be an affirmance.
 

 The fundamental issue for our determination is the effect of section 5-1311 of the General Obligations Law. That section provides in pertinent part:
 

 "1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:
 

 "a. When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid;
 
 *536
 
 but nothing herein contained shall be deemed to deprive the vendor of any right to recover damages against the purchaser for any breach of contract by the purchaser prior to the destruction or taking; (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the extent of the destruction or taking, an abatement of the purchase price.”
 

 Paragraph b of subdivision 1 provides that when legal title or possession has been transferred to the purchaser he is not relieved by destruction of all or any part of the property from his obligation to pay the price; subdivision 2 directs that the section be interpreted and construed so as to effectuate its general purpose to make uniform the laws of the States which enact it
 
 [1]
 
 and subdivision 3 provides that the section may be cited as the Uniform Vendor and Purchaser Risk Act.
 

 Originally enacted in 1936 on the recommendation of the Law Revision Commission (1936 Report of NY Law Rev Comm, pp 757-780) as section 240-a of the Real Property Law, and repealed and re-enacted in 1963 as section 5-1311 of the General Obligations Law,
 
 [2]
 
 the section is based upon a proposed uniform law drafted by Professor Samuel Williston, presented by him to the National Conference of Commissioners on Uniform State Laws in 1934, and adopted after some revision at the 1935 meeting of the commissioners (1934 Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, pp 202-205; 1935 Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, pp 138-139). The melange from which is to be distilled the interpretation of the quoted section is, therefore, the intention of Professor Williston and the Commissioners on Uniform State Laws as reflected in their drafts and reports, the intention of the 1936 Legislature as reflected in the statute enacted and the report of the Law Revision Commission, and the intention of the 1963 Legislature in the light of case law construing the section in the interim.
 

 
 *537
 
 There is abundant evidence that in drafting the proposed uniform law Professor Williston sought only to change the rule he believed erroneously declared by Lord Eldon in
 
 Paine v Meller
 
 (6 Vesey Jr 349 [holding the purchaser required to pay the full price despite destruction of part of the property contracted for]) which was followed in a number of States in this country, including New York. The act as drafted by him turned on whether title or the right to possession had passed, and reversed the
 
 Paine v Meller
 
 rule by providing that if it had not and "all or a material part” was accidentally destroyed "the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price he has paid, unless the contract expressly provides otherwise”. His memorandum and the commissioners’ 1934 report shows the intention to be to apply "to real estate the same rule as to risk as in the Sales Act and the Conditional Sales Act” (1934 Handbook,
 
 supra,
 
 at p 202). It was, thus, addressed to risk and not to remedy. The 1935 report proposed essentially the same statute, though with some drafting changes and stated in a prefatory note that "The object of the Act is to protect the purchaser of real estate where there is a binding contract of sale and the property is destroyed before the purchaser has gone into possession or has taken legal title, and to protect the vendor after transfer of possession” and that "The rule which is proposed in this Act is that the purchaser cannot be held if he has taken neither possession nor title, but can be held if he has taken possession or has taken title” (1935 Handbook,
 
 supra,
 
 at p 138; see, also, 9C Uniform Laws Ann, Uniform Vendor and Purchaser Risk Act, p 313). Conspicuously absent from any of these materials is any reference to a purchaser’s right to specific performance with an abatement, but since specific performance with an abatement imposes on the seller only the risk of loss contemplated by the act, that absence is wholly consistent with the stated purpose of the act (see Note, Uniform Vendor and Purchaser Risk Act, 51 Harv L Rev 1276, 1279-1280) and cannot be read as indicating any intention to affect the purchaser’s optional remedy.
 
 [3]
 

 
 *538
 
 In adopting the act in 1936 the New York Legislature added to paragraph (a) all of clause (2) and so much of clause (1) as follows the semicolon. Since clause (2) which permits either party to enforce the contract when only an immaterial part of the realty is destroyed concludes with the phrase "but there shall be, to the extent of the destruction or taking, an abatement of the purchase price”, it can be argued that because clause (1) does not mention abatement of the price there can be none when a material part of the realty has been destroyed. However, that argument overlooks the fact that clause (1) addresses only the nonenforcement of the contract, to which abatement is simply irrelevant. Whether in the original or the New York version, therefore, the statute simply does not speak to the situation in which a purchaser seeks to enforce the contract notwithstanding that a material part of the realty has been destroyed. In consequence, the common-law abatement rule
 
 [4]
 
 would continue to apply, absent a contrary indication in some other portion of the statute or in its legislative history.
 

 That the Legislature did not believe its amendments changed the proposed uniform law materially is evidenced by the fact that subdivisions 2 and 3, acknowledging the genesis of the section as a uniform act and providing that it be interpreted uniformly, remained in the section as enacted. Contrary evidence exists, however, as the Trial Judge noted, in the following portion of the Law Revision Commission’s Report (1936 Report of NY Law Rev Comm, pp 778-779): "It will be noted further that under subdivision (a) of the uniform act, where the loss occurs prior to the transfer of legal title or of possession, the contract in effect is rescinded, since 'the vendor cannot enforce the contract and the purchaser is entitled to recover any portion of the price that he has paid.’ This result is contrary to the result reached in the case of
 
 Polisiuk v. Mayers
 
 (Appellate Division, Second Department) [205 App Div 573, app den 206 App Div 765] where the contract provided that 'the risk of loss or damage to premises by fire until the delivery of the deed is assumed by the seller.’
 
 *539
 
 The court held that even where a substantial part of the property was destroyed by fire prior to the delivery of the deed, the purchaser was entitled to specific performance as to the part remaining with an abatement of the purchase price to the extent of the loss. Although this holding preserves for the purchaser the benefit of his bargain, it would seem more reasonable and more in accord with the actual, although unexpressed intention of the parties, to call the deal off upon the destruction of all or of a substantial part of the property.” (Matter in brackets added.) Based on the last sentence of that paragraph one could conclude, as did the Trial Judge, that specific performance with an abatement was not to be permitted under the section, even though it did not in so many words say so. The extent to which the gratuitous assessment in that last sentence of what was "reasonable and more in accord with the actual, although unexpressed intention of the parties” was incorrect is, however, clear from the cases thereafter decided under the statute which allowed abatement notwithstanding substantial destruction.
 

 In
 
 World Exhibit Corp. v City Bank Farmers Trust Co.
 
 (186 Misc 420), decided in 1945, the assignee of a vendee in possession under a contract providing that "The risk of loss or damage to said premises by fire, until delivery of said deed, is assumed by the seller” was granted specific performance with an abatement. The court reasoned (at p 423) that section 240-a of the Real Property Law "was intended primarily to shield a vendee”, "was not intended to be invoked at the instance of a vendor”, and did not prevent a vendee from seeking specific performance. It noted also that the section was not operative where "the contract expressly provides otherwise”. Affirming, the Appellate Division concluded (270 App Div 654, 659) that since the parties had provided otherwise the statute played no part and the common-law rule applied. We affirmed without opinion (296 NY 586).
 

 Two years later in
 
 Heerdt v Brand
 
 (272 App Div 143) the Appellate Division, Fourth Department, affirmed a judgment giving a purchaser out of possession an abatement to the extent of the cost of repair where five days prior to closing the boiler in the house was substantially damaged. The court reasoned that the addition of section 240-a (subd 1, par [a], cl [2]) effected no change in the law, and that the loss fell on the seller since neither title nor possession had passed, but did not otherwise discuss the basis upon which abatement was al
 
 *540
 
 lowed. Three years later, in 1950, the same Appellate Division in
 
 Rizzo v Landmark Realty Corp.
 
 (277 App Div 1094, app den 278 App Div 630) reversed a judgment dismissing plaintiff purchaser’s complaint for specific performance stating flatly that: "Section 240-a of the Real Property Law does not deprive a vendee of the right of specific performance with abatement. Said section (subd. 1, par. [a]) renders unenforcible insofar as the vendor is concerned the right to specific performance when the loss is material. It does not, however, destroy any common-law right of the vendee to specific performance with abatement.”
 

 Burack v Tollig
 
 (6 Misc 2d 450) involved a purchaser out of possession under a contract that was silent as to risk of loss,
 
 [5]
 
 who was awarded specific performance with an abatement by reason of a fire, occurring between contract and closing, which destroyed the dwelling on the property. Special Term held section 240-a to be applicable but stated (citing
 
 World Exhibit Corp., supra,
 
 and
 
 Rizzo, supra)
 
 that (at p 451) "It has been held, however, that the said provisions of the cited section do not deprive the purchaser of his common-law right to specific performance with an abatement” and noted that the parties conceded plaintiff’s right to such an abatement. The Appellate Division, Second Department, modified with respect to damages and affirmed (9 AD2d 914) and we affirmed, without opinion (10 NY2d 879). The last case decided under section 240-a before it was repealed and re-enacted as section 5-1311, likewise a Second Department decision, was
 
 Matter of County of Westchester v P. & M. Materials Corp.
 
 (20 AD2d 431). There a vendee out of possession when the contracted-for property was condemned was held entitled only to return of its deposit, the court differentiating condemnation from a material destruction of the property. In doing so it observed with respect to the latter (20 AD2d,
 
 supra,
 
 at pp 433-434):
 

 "Though the Law Revision Commission Report stated that, upon a material destruction of the premises, the Uniform Act effected a rescission when the purchaser had neither legal title nor possession (Real Property Law, § 240-a; 1936 Report of N. Y. Law Rev. Comm., pp 765, 778), it has been held that, under those circumstances, the purchaser may be granted
 
 *541
 
 specific performance together with an abatement of the selling price
 

 * * *
 

 “In the case of a material destruction, the availability of specific performance with abatement under the statute (Real Property Law, § 240-a), upon which we have not had occasion to pass
 
 (cf. Polisiuk v. Mayers,
 
 205 App Div 573 [2d Dept.];
 
 Burack v. Tollig,
 
 10 NY2d 879,
 
 supra)
 
 finds rational support in the expectation that a purchaser may want his bargain for a proportionately diminished consideration. Such an intention may reasonably be imputed to the contracting parties, resting as it does on the just result that both parties will thus realize, in lesser form, the substance of their agreement.”
 
 [6]
 

 Thus, notwithstanding the statement in the 1936 Law Revision Commission Report quoted above, no decision made under section 240-a denied to a purchaser out of possession specific performance with an abatement when there was a material destruction of the property between contract and closing.
 
 [7]
 
 Against this decisional background, the repeal and reenactment of the section as section 5-1311 of the General Obligations Law must be assessed. The applicable principle is stated in
 
 Matter of Scheftel
 
 (275 NY 135, 141): "the Legislature is presumed to have had knowledge of the construction which had been placed on the provision * * * and in adopting in these re-enactments the language used in the earlier act, must be deemed to have adopted also the interpretation of the legislative intent decided by this court, and to have made that construction a part of the re-enactment”,
 
 [8]
 
 and in McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1, Statutes, § 75, p 165): "In the case of a revision or consolidation of statutes, if there is no change in the phraseology of the statute, its former judicial construction becomes a part of the subsequent statute.” The conclusion to be drawn from the foregoing analysis is that as we stated in
 
 Hecht v Meller
 
 (23 NY2d 301, 304,
 
 supra),
 
 section 5-1311 "bestowed a privilege on vendees to rescind the contract” in the event of a material destruction
 
 *542
 
 prior to closing but did not take from them their common-law optional remedy of specific performance with an abatement.
 

 The remaining issues may be summarily disposed of. When the Appellate Division reverses on the facts, as it was empowered to do based on its evaluation of the record, our usual procedure is to adopt those findings which the weight of the evidence supports. Bearing in mind the submission by seller’s attorney of a proposed modified contract more than one week after seller’s vice-president claims the purchaser abandoned the contract, the continuing negotiations between the parties, the failure to return the contract deposit until after the insurance settlement amount was known, and the testimony that seller’s officer had agreed to await the insurance settlement before resolving the matter, we hold that the weight of the evidence supports the Appellate Division’s factual conclusions. Nor do we find any error in the Appellate Division’s modification of the abatement figure, based as it apparently was upon defendant’s statements of value in the proofs of loss submitted by it.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order affirmed.
 

 [1]
 

 . Williston states that the act has been adopted in California, Hawaii, Michigan, North Carolina, Oregon, South Dakota and Wisconsin (7 Williston, Contracts [3d Jaeger ed], § 943B). The parties have not cited, nor has our research uncovered, any decision from any of those States germane to the present case.
 

 [2]
 

 . By chapter 576. The repeal of section 240-a of the Real Property Law was by subdivision 7 of section 19-101 of the General Obligations Law.
 

 [3]
 

 . Indeed, the author of the Harvard Law Review note cited above concluded that "specific performance with compensation may well be allowed under the Act if it is adopted in those majority jurisdictions where the question could not previously arise” (51 Harv L Rev, at p 1280). New York, which in cases such as
 
 Sewell v Underhill
 
 (197 NY 168) required the purchaser to complete the sale without abatement, was such a jurisdiction.
 

 [4]
 

 .
 
 Polisiuk v Mayers
 
 (205 App Div 573, app den 206 App Div 765) recognized the right to specific performance with abatement when the contract put the risk of loss prior to delivery of the deed on the vendor, which is what the statute now does when the purchaser is out of possession. Specific performance with abatement had long been recognized in other situations, e.g.,
 
 Feldman v Lisansky
 
 (239 NY 81);
 
 Bostwick v Beach
 
 (103 NY 414);
 
 Warren v Hoch
 
 (276 App Div 607; see Friedman, Contracts and Conveyances of Real Property [3d ed], p 808).
 

 [5]
 

 . The reporter’s memorandum in this court (10 NY2d 879) stated that "The contract provided that, with respect to fire losses, section 240-a of the Real Property Law should apply” but that, of course, is consistent with the statute, not a provision "otherwise”.
 

 [6]
 

 . Compare the last sentence of the quotation from the 1936 Law Revision Commission Report,
 
 supra,
 
 p 539, and note the reference in the
 
 P. & M. Materials Corp.
 
 decision to the very page of that report from which the quotation is taken.
 

 [7]
 

 . Accord: Friedman, Contracts and Conveyances of Real Property ([3d ed], § 4.11, p 381): “Presumably this [the statute] does not prevent the purchaser from enforcing the contract with an abatement”.
 

 [8]
 

 . (Cf.
 
 Engle v Talarico,
 
 33 NY2d 237, 242.)